Anthony CARDARELLA, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18400, 18441.

United States Court of Appeals
Eighth Circuit.

March 21, 1967.

See also 8 Cir., 351 F.2d 272, 351 F.2d 443.

Anthony Cardarella, pro se.

Fred M. Vinson, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Brian Conboy, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before MATTHES and LAY, Circuit Judges and REGAN, District Judge.

REGAN, District Judge.

His two most recent applications for post-conviction relief, one under Rule 35, Federal Rules of Criminal Procedure, and the other under 28 U.S.C. Section 2255, having been denied by the district court, Anthony Cardarella has again appealed to this Court. Again we affirm both orders.

Cardarella was convicted in 1961 on three counts of an indictment, the first two charging him with the substantive offenses of obstructing justice in violation of 18 U.S.C. Section 1503, by shooting a witness because he testified before a federal grand jury in a narcotics investigation, and by the same assault endeavoring to intimidate this witness from testifying in a subsequent trial. The re-maining count charged him with conspiring to obstruct justice in violation of 18 U.S.C. Section 371. He received concurrent sentences of five years for the substantive offenses and an additional sentence of five years on the conspiracy count to run consecutive to the sentence on the other counts.

The convictions of Cardarella and Felix Ferina, a co-defendant, were affirmed by this Court in Ferina v. United States, 8 Cir., 302 F.2d 95 (1962) cert. denied sub nom. Cardarella v. United States, 371 U.S. 819, 83 S.Ct. 35, 9 L. Ed.2d 59 (1963).

Cardarella's motion under Rule 35, attacking the validity of his sentence, is based on the contention that the consecutive sentences imposed double punishment for the same offense. His theory is that the evidence necessarily used to prove the substantive offenses was also required to prove the conspiracy charge, hence, there was but one offense within the reasoning of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L. Ed. 306 and Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.

Petitioner's protestations to the contrary notwithstanding, this same issue was advanced by him in an earlier unsuccessful motion also filed under Rule 35 which this Court held to be without substance. Cardarella v. United States, 8 Cir., 351 F.2d 272 (1965). So, too, Ferina also made a similar claim of double punishment which was rejected by this Court. Ferina v. United States, 8 Cir., 340 F.2d 837 (1965). The only difference between the present motion and the earlier ones is in the approach petitioner takes, but not in the fundamental issue raised.

In his pro se brief, Cardarella concedes the general rule to be as stated in Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1189, 90 L.Ed. 1489 (1946), namely, that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses, because ordinarily the conspiracy has "ingredients, as well as implications, distinct from the completion of the un-

lawful project." Additionally, he does not dispute the fact that the conspiracy offense *charged* was an agreement to act in violation of the law and not the substantive acts themselves. He urges, however, that *Pinkerton* does not here apply, on the theory that the *proof* used to obtain a conviction upon both the conspiracy and the substantive charges was the same. Stated otherwise, petitioner's contention is that as the case was actually tried and submitted to the jury, "the implication, ingredient, or proof of fact necessary to consider for conviction on the conspiracy charge was also necessary to consider to obtain a conviction on the obstruction of justice charged." We do not agree.

Cardarella misreads *Blockburger* and *Pereira*. These and other cases teach that the test to be applied to determine whether there are two offenses or only one is whether proof of any additional fact, not constituting an element of one of the offenses, is required to sustain a conviction on the other. Clearly, an agreement to do the unlawful acts here charged is an offense separate and distinct from the doing of those acts, even though the doing of the acts are the overt acts charged in the conspiracy count. It is only when such an agreement is a *necessary* part of the substantive crime that only a single punishment may be imposed. Ferina v. United States, 8 Cir., 340 F.2d 837, 841. Accepting that holding, Cardarella expressly disclaims any contention that either an agreement of joint or reciprocal action between himself and Ferina was necessary in order to prove their separate guilt of the substantive offenses. Yet an agreement was of the very essence of the conspiracy charge.

Cardarella's present theory is premised upon his construction of excerpts from the Court's charge to the jury which emphasized the decisive significance of the purpose or reason for shooting the witness, and referred to the importance of the statement "This is from Tony."

Cardarella summarizes his position in this fashion, "It is the appellant's contention that once the conspiratory implication (in the statement, "this is from Tony.") was considered to conclude guilt on the substantive count, the use of it again for consideration of guilt on the conspiracy count, makes the counts identical upon conviction of the counts."

Purpose and motivation for the assault was vital, not however as proof in itself of an agreement or conspiracy, but as demonstrating that the substantive offenses and the conspiracy to commit them were federal, as distinguished from state, crimes. Ferina v. United States, 302 F.2d, l. c. 102. True, the purpose for which the assault was perpetrated and for which it had been agreed upon was a necessary element common to both the substantive and conspiracy offenses, just as was the witness' past or expected conduct. However, once the requisite motivation was found, and his individual guilt for the substantive offenses established, petitioner still could not have been convicted on the conspiracy count absent proof, and a finding by the jury, of *agreement* on his part with another to commit the offense.

That evidence which was relevant in proving the existence of a conspiracy was also relevant or even vital in proving the entirely different fact of motivation in both the substantive and conspiracy counts is beside the point. The question of merger or identity of offenses is dependent upon the nature of the ultimate facts which must be proved in each instance, not the specific evidence tendered to prove those facts. Nor does the doctrine of merger come into play simply because other evidence may not have been available to or adduced by the government.

The order denying petitioner's motion for relief under Rule 35 is affirmed on the merits, although the appeal could well have been dismissed as frivolous.

By his § 2255 motion [1] Cardarella argues (1) that the indictment was obtain-

---

1. The denial of an earlier motion, asserting another ground for relief was affirmed by this Court in Cardarella v. United States, 8 Cir., 351 F.2d 443 (1965).

ed in violation of his constitutional rights guaranteed by the Fifth and Sixth Amendments, and for such reason the Court was without jurisdiction to try him; (2) that he was denied a fair trial because the jury was permitted to separate during their deliberation; and (3) that by reason of claimed lack of diligence and negligence on the part of his retained counsel, his representation was ineffective, thus depriving him of due process of law. The trial court determined that these contentions were without merit and denied the motion without a plenary hearing. Cardarella v. United States, 258 F.Supp. 813 (D.C. 1966).

The grand jury which subsequently indicted petitioner was conducting a general inquiry into the circumstances surrounding the shooting of the witness. As part of this investigation, Cardarella, who had not been arrested or charged with an offense, appeared and testified before the grand jury in response to a subpoena, without having been advised of his right to counsel. He now claims that ·such appearance of itself violated both his constitutional right against self-incrimination and his Sixth Amendment right to counsel and thus voids the indictment.

Petitioner was interrogated concerning the subject of the grand jury's inquiry, and although he "testified freely" he made no incriminating statements. None of his testimony was used at the trial, so it could have had no effect on the jury which tried the case. Having given no incriminating or other inadmissible testimony before the grand jury, Cardarella does not contend, nor could he reasonably do so, that the indictment was based upon any such evidence.

■ The rule is now established that "(a)n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough for the trial of the charge on the merits. The Fifth Amendment requires nothing more." Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). Cf. United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). There is an entire want of any showing in the moving papers and the trial record of prejudice in fact to petitioner.

■ We hold that the self-incrimination clause of the Fifth Amendment does not automatically immunize from subpoena for testimony before a grand jury one who is neither in custody nor then charged with an offense, merely because an indictment might eventuate from the inquiry. "The grand jury was entitled to his testimony subject, of course, to his right not to incriminate himself." United States v. Winter, 2 Cir., 348 F.2d 204, 208 (1965).

■ Petitioner does not contend that he made a futile request to consult with counsel nor that any of his testimony was not rightfully elicited from him. Whether or not Cardarella, either as a "potential" defendant or otherwise, should have been advised of his right to assistance of counsel and against self-incrimination before entering the grand jury room need not be decided under the instant facts, there being no demonstrable prejudice to him in any event.[2]

2. Cardarella was tried long before *Escobedo* (378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977) and *Miranda* (384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) were decided. Those cases delineated procedures to safeguard the Fifth Amendment privilege against self-incrimination, procedures which in any event have no retroactive application, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966). What those cases held was simply that incriminating evidence obtained from an individual as a result of custodial police interrogation is inadmissible unless the standards therein announced are demonstrably complied with. Here, not only was Cardarella not "in custody and deprived of his freedom of action," the very basis of those rulings, but no incriminating statements were made by him or offered in evidence either at his trial or in the grand jury proceeding.

Cf. United States v. Scully, 2 Cir., 225 F.2d 113 (1955).

Petitioner's main reliance is on the views of the minority in Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964). That case, decided in 1964 long after Cardarella's trial involved incriminating statements made by an in-custody defendant, a situation wholly unlike that here present. Even so, the majority of the Court held, in accordance with what we believe the precedents dictate, that the indictment was not thereby rendered invalid.

We also note that in *Jones*, which was a direct appeal from the conviction, the defendant had filed a motion to dismiss the indictment on the specific ground that he had been brought before the grand jury, in police custody and without counsel, to testify against himself. Here no motion to quash or dismiss the indictment was filed in the trial court on the ground now asserted, either by Cardarella or by any other defendant, no doubt because counsel saw no substantial basis in law or in fact for such an objection, and therefore this complaint should be deemed waived. Cf. West v. United States, 8 Cir., 359 F.2d 50, 57 (1966). In any event, no exceptional circumstances are here present which would authorize a § 2255 collateral attack upon the proceedings of a legally constituted grand jury which resulted in the indictment of Cardarella and Ferina.

Cardarella next claims in this Court that the separation of the jurors during their deliberation resulted in his being denied a fair trial.

The jury failed to reach a verdict after two hours of deliberation on the day the case was submitted and was excused until the following morning. None of the defendants made any objection to this procedure, nor had there been a re-quest to confine the jurors during the course of the trial. It was not until the Court convened the next day that any objection was voiced, that solely on the theory newspaper reports published that morning and radio broadcasts concerning the case were prejudicial to the defendants. There was neither a showing nor even an intimation that any juror actually saw the newspaper, heard any of the broadcasts, or was in way influenced thereby.[3]

In Lucas v. United States, 8 Cir., 275 F. 405, 407 (1921), this court held that it was not error to permit the jury to separate during their deliberation. That the reason for the separation in that case was the inability of the marshal to secure suitable quarters to house the jurors overnight does not affect the ultimate issue of prejudice vel non. The real basis of the decision is that the matter is one for the sound discretion of the trial judge. That none of the experienced counsel for the three defendants in the instant case felt that the trial judge had abused his discretion is evidenced by the want of any objection to the separation of the jury until the following morning.

McHenry v. United States, 51 App. D.C. 119, 276 F. 761 (1921), is another case which involves the separation of jurors during the trial, in this instance over the objection of defendant. The Court held that even though the case was a capital one, the trial judge did not abuse his discretion by permitting the separation. To the same effect is Wheeler v. United States, 82 U.S.App. D.C. 363, 165 F.2d 225 (1947), another capital case, holding that whether a jury should be kept together is discretionary, and that the exercise of such discretion will not be reviewed unless it appears *affirmatively* that prejudice resulted to

---

3. The newspaper article was placed in evidence in support of the motions for mistrial. Although much of it is devoted to a résumé of the prosecutor's summation, ignoring the defense argument, the article is factual and neither inflammatory nor inherently prejudicial. The jury was not exposed to information not already known to them. Cf. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), and Sheppard v. Maxwell, 384 U.S. 33, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

the defendant. No such showing is attempted in petitioner's motion.

Kleven v. United States, 8 Cir., 240 F.2d 270 (1957), a more recent authority in this circuit, cites *McHenry* and *Lucas* with approval. Another case cited in *Kleven* is Holt v. United States, 218 U.S. 245, 31 S.Ct. 2 (1910), which states the rule to be that the matter of the separation of the jury is within the sound discretion of the trial judge.

Other cases to the same effect are Koolish v. United States, 8 Cir., 340 F.2d 513, 528 (1965) and Hines v. United States, 10 Cir., 365 F.2d 649, 651 (1966). *Hines* is squarely in point in holding that "the trial court has full discretion in determining whether the jury shall be allowed to separate at any particular time during the course of the trial *or thereafter.*" There, as here, the separation complained of was after the jury had commenced its deliberations. What the court said in *Hines* is also applicable here:

"There is no showing in the case at bar that any circumstances existed which would in any way indicate there was an abuse of discretion on the part of the trial court in allowing the jury to separate. The mere fact that the jury was allowed to separate, as it was, certainly does not show such an abuse. Counsel for the appellant made no objection to the action of the trial court in ordering the overnight recess, but the existence or absence of such objection is not decisive. We may however take the absence of objection to indicate that on the part of appellant's counsel he felt no unusual circumstances to be present whereby the court's action would prejudice his client."

Certainly if, as these cases hold, it is not reversible error on a direct appeal from the conviction to permit the jury to separate, absent an affirmative showing of prejudice and abuse of discretion, it is all the more true that such separation, of itself, does not amount to a denial of a fair trial sufficient to authorize a § 2255 collateral attack.

The case of United States v. D'Antonio, 7 Cir., 342 F.2d 667 (1965), relied upon by defendant, is clearly distinguishable on its facts. There, the Court held, also on direct appeal, that it was error to permit the jury to separate after submission of the case, *over objection of the defendant,* and without any cautionary instruction given by the judge himself. The majority distinguished *Kleven* on the ground the defendant had made no objection either to the separation during deliberations or to the failure of the court to readmonish the jury. Judge Swygert dissented and expressed the view that "whether a jury is impounded during its deliberation is a matter for the discretion of the trial judge," further stating, l. c. 672,

"Moreover, separation of the jury during deliberation of its verdict and separation during the course of a trial are not logically distinguishable. If jurors are apt to be influenced by outside contacts during periods when they are separated while deliberating, they are equally apt to be influenced by those contacts during the trial."

In a later Seventh Circuit decision following *D'Antonio,* the Court emphasized the fact that in both instances the separation was *over the defendant's objection.* United States v. Panczko, 7 Cir., 353 F.2d 676 (1965). An additional factor stressed in *Panczko* was the inconvenience which the separation of the jurors at a late hour imposed upon some of the jurors in that case.

The trial record in the instant case, which we have examined, does not contain the actual admonitions given by the court at each adjournment or recess, but shows only that in each instance the jury was "duly admonished." However, immediately after all defendants moved to discharge the jury because of the separation, the court made the following statement,

"The Court instructed the jury *rather vigorously at each adjournment concerning their conduct.* There was no request on the part of the defendants, or on the part of any of them, be-

fore the jury was discharged last night. There was no suggestion or even an intimation that any of the members of the jury had violated any of *the Court's instructions with respect to reading the newspaper or listening to the radio broadcasts, or television,* and in this kind of a case, in the opinion of the Court, it would not require the keeping of *the jury together* unless there was some unusual circumstances, and the Court knows of no such request, and the request will be denied."

It is self-evident that at such time the court's recollection of his "vigorous" instructions to the jury with respect to reading newspapers, listening to the radio and the like was fresh. Significantly, none of the counsel for any of the three defendants took issue with the judge's statement nor in any way even intimated that the jury had not been adequately admonished. This in itself impels us to accept the court's contemporaneous statement of the nature and content of his admonitions, in spite of petitioner's statement in his brief, some five years later, that *"relying upon his memory* he wishes to take issue with the trial court's statement that [the instructions at each adjournment concerning the jurors' conduct] were given 'rather vigorously' and they were of the complexity claimed by the trial court."

At the time the jury was excused for the night, the trial judge had admonished them to "be very careful" while they were away from court, but did not, as would have been preferable, admonish them at greater length nor refer specifically to his previously more detailed admonitions. In *McHenry*, it is obvious that no additional admonition at all had been given at the time of the separation. In *D'Antonio,* the only admonition given was through the marshal, a questionable procedure which at the very least was a substantial factor in the majority's decision.

 We hold that in the circumstances here of record, the separation of the jury during their deliberations did not deprive Cardarella or the other defendants of a fair trial or otherwise amount to a denial of due process.

Cardarella's remaining contention is that he was denied the effective assistance of counsel, and on this issue argues that the making of such an allegation necessarily required a plenary hearing in the district court. We do not agree.

Petitioner makes no claim that counsel did not try the case competently and in good faith insofar as concerns the trial strategy and tactics, including the production of defensive evidence and the examination and cross-examination of witnesses, as well as making a skillful and cogent argument to the jury and adequately objecting to the charge. Nor does he contend that counsel was under any physical or mental disability or had inadequate time to prepare for trial.

Judge Duncan had this to say about Cardarella's counsel:

"His chief counsel has long been recognized as one of the most outstanding criminal lawyers at the Kansas City Bar, both Federal and State, and has enjoyed unusual success in the trial of criminal cases.

His associate counsel was a former member of the Federal Bureau of Investigation, and former assistant to the Attorney General of the United States, and long engaged in the pactice of law at the Kansas City Bar."

And since the essence of the complaint Cardarella is making respecting effectiveness of assistance of counsel would be equally applicable to Ferina's attorneys (and Biase's, for that matter), we here note Judge Duncan's appraisal of counsel for Ferina, also of the latter's own choosing:

"One of his counsel in that case was also a former member of the Federal Bureau of Investigation and for many years had been First Assistant United States Attorney for the Western District of Missouri. Associated with him was his partner, who is recognized as

one of the outstanding appellate court practitioners in this circuit."

True, the mere fact that persons on trial are represented by "four such distinguished lawyers" with "broad legal experience" (Judge Duncan's characterization) does not, of course, negative a charge that assistance of counsel in a specific case was ineffective in the constitutional sense. However, no one reading the trial record in this case, as we have done, can fail to agree with the evident conclusion of Judge Duncan that the case was well tried for all defendants and with professional fidelity.

The rule applicable is that a charge of inadequate representation can prevail "only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court." O'Malley v. United States, 6 Cir., 285 F.2d 733, 734 (1961). See also Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, 793 (1958), cert. den. 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Dayton v. United States, 115 U.S.App.D.C. 341, 319 F.2d 742, 743 (1963), cert. den. 375 U.S. 947, 84 S.Ct. 357, 11 L.Ed.2d 277; Scott v. United States, 6 Cir., 334 F.2d 72, 73 (1964), cert. den. 379 U.S. 917; and Frand v. United States, 10 Cir., 301 F.2d 102, 103 (1962). In *Frand*, the principle was stated in this fashion:

> "But the constitutional right to the effective assistance of counsel does not vest in the accused the right to the services of an attorney who meets any specified aptitude test in point of professional skill. * * * It is instances in which resulting from the substandard level of the services of the attorney the trial becomes a mockery and farcical that the judgment is open to collateral attack on the ground that the accused was deprived of his constitutional right to effective assistance of counsel."

There is no right to a § 2255 hearing when an examination of the motion and the records and files of the case conclusively shows a hearing would serve no useful purpose. Taylor v. United States, 8 Cir., 282 F.2d 16, 20 (1960). This is particularly true where, as here, "the allegations of the motion to vacate, accepted as a correct statement of the facts for present purposes, do not constitute as a matter of law a failure to have the effective assistance of counsel in the trial resulting in appellant's conviction." O'Malley v. United States, 6 Cir., 285 F.2d 733, 735 (1961).

Petitioner's motion rests his charge of the inadequacy of counsel upon three matters. He complains that counsel should have, but failed to urge on appeal the alleged error in permitting the jury to separate. However, counsel is under no duty to brief every assignment of error made in a motion for new trial, particularly where, as here, there is no prejudice in fact, and counsel's own experience and the precedents in this circuit indicate the point would not be sustained, and there are other assignments of error which counsel believes to be more meritorious. We note that *D'Antonio*, which is not only distinguishable on its facts but which is essentially inconsistent with the precedents in this circuit, was decided long after the appeal in this case was argued, and hence could not have been known to counsel. The effectiveness of representation is not to be judged by hindsight.

Petitioner also complains that counsel was negligent in failing to urge on appeal the exceptions made to the court's charge. Neither in his present motion (which we note specifically refers to the transcript pages at which the exceptions were made) nor in his brief in this court does petitioner point out wherein or in what respect he believes the exceptions were well taken or the charge as given was reversibly erroneous. Yet unless the charge contained error vital to the defendant's right to a fair trial, there is no possible basis for a contention that counsel was grossly negligent.

The instructions which are contained in the court's charge cover all facets of

the case in great detail. We have carefully read the entire charge, and in our judgment none of the exceptions would have been sustained on appeal. Other than objections going to the sufficiency of the evidence to warrant the submission of the case, objections which were raised and skillfully argued on appeal, most of the objections pertained to the refusal of instructions commenting on the criminal record and character of the government's principal witness, the substance of which were included in the charge as given.

The mere fact that petitioner's counsel may have made contemporaneous objections in the record to the charge, or even that he may have immediately after the trial expressed himself to his client as believing the objections had merit, does not mean that counsel must nevertheless brief and argue points which further research and study would demonstrate are without legal merit.

 We have repeatedly held that alleged errors which were not preserved for review or which might properly have been but were not raised on appeal are not cognizable upon collateral attack in a § 2255 proceeding. Link v. United States, 8 Cir., 295 F.2d 259 (1961); Glouser v. United States, 8 Cir., 296 F.2d 853 (1961); Cardarella v. United States, 8 Cir., 351 F.2d 443 (1965). In Cardarella, this petitioner was told, 351 F.2d, l. c. 447,

"It is not the purpose of such a motion to correct errors overlooked on direct appeal."

Petitioner's remaining complaint is that his counsel was not diligent in discovering certain evidence "extremely valuable" to his defense, thereby rendering his assistance ineffective. The evidence in question, allegedly "newly discovered", formed the basis of motions for a new trial filed by all defendants, the denial of which were affirmed by this Court. Ferina v. United States, 8 Cir., 302 F.2d 95 (1962).

In *Ferina* we pointed out that there were five requirements for the granting of a new trial upon the ground of newly discovered evidence, the only one of which we considered was the necessity that facts be alleged "from which the court may infer diligence on the part of movant." We did not specifically determine whether any of the other requirements had been met, although our discussion of the nature of the evidence makes it rather evident that had such determination been necessary, we would have ruled adversely to petitioner and his partner in crime.

As the basis of his present motion, Cardarella seizes upon the following statement of this Court in ruling the issue:

"The record plainly shows lack of diligence on the part of the defendants in the matter of discovery of the evidence in question."

We are convinced that at best the evidence was impeaching, if not cumulative, and that in any event it was not of such a nature as would, on a new trial, probably produce an acquittal.

The evidence in question consisted of two police reports, both made by police officer Sanders, a government witness. One report, on a printed form designated "Complaint Report," indicates, without stating the source of the information but which undoubtedly was Mrs. DeWitt, another government witness, that the suspects were colored. Her trial testimony that the men she saw were not Cardarella and Ferina was consistent with the police report, and certainly was favorable to petitioner.

The other report, in the officer's handwriting, stated that Sheetz, the witness who had been shot, *"refused to give his name. He also appeared hesitant about giving information about the suspects."* At the trial, Sanders, consistently with this report, testified that Sheetz, in great pain at the time, would not tell his name, nor would he tell who shot him, although he said he knew who they were. Sanders further testified that most of the questions he asked of Sheetz were answered "yes" or "no."

Cardarella places great emphasis upon the following portion of the police report: "He (Sheetz) first stated it was two

white men and then said it was 2 colored males with white handkerchiefs over their faces," stressing the latter statement. However, the very fact that Sheetz first said the men were white and then said they were colored evidences his hesitancy to identify his assailants, a hesitancy which is understandable in light of what had happened and the severe pain he was suffering.

Cardarella does not claim that his counsel actually knew of but negligently failed to avail himself of the police reports and the information therein. Essentially, his position is that in view of the refusal of this Court to accept the reasons counsel assigned as justifying their failure to "discover" the evidence, it has been judicially determined that counsel should have known of or discovered the evidence. Even so, "lack of diligence" in discovering evidence which was not used at the trial is not necessarily to be equated with ineffective assistance of counsel. Perfect or errorless counsel is not required as a prerequisite to a fair trial consonant with due process.

This is not a case in which there was a "failure to present the case in any fundamental respect." The one instance in which there was a "lack of diligence," in a legal sense, in "discovering" evidence does not suffice to overcome the overwhelming proof of record demonstrating the adequacy and ability of counsel, particularly where the evidence in question, even if availed of, could not have produced a different result. Our examination of both the trial and appellate record satisfies us that counsel for all defendants thoroughly prepared and tried the case with great resourcefulness, competently presented the available defenses, and disclosed all weaknesses and inconsistencies in the government's case.

We find Cardarella's claim that he was deprived of his constitutional rights to be without merit. The order overruling the motion to vacate the sentence and judgment is affirmed.