Robert NICHOLSON, Petitioner,

v.

Maurice H. SIGLER, Warden, Nebraska
Penal and Correctional Complex,
Respondent.

Civ. 1605 L.

United States District Court,
D. Nebraska.

Feb. 19, 1971.

L. Bruce Wright, Lincoln, Neb., for
petitioner.

C. C. Sheldon, Asst. Atty. Gen., for re-
spondent.

## MEMORANDUM OF DECISION

URBOM, Judge.

The petitioner in this action, Robert
Nicholson, is an inmate at the Nebraska
Penal and Correctional Complex. He has
filed in this court a petition for writ of
habeas corpus pursuant to 28 U.S.C.A.
§ 2241 et seq. An order to show cause
was issued, counsel appointed, and an ev-
identiary hearing held. The matter now
stands ready for final determination.

The following is a summary of the
facts as found in counsel's "Joint Stipu-

lation of Facts and Issues," being petitioner's exhibit 9:

On or about October 21, 1964, the petitioner and a co-defendant were incarcerated in the jail at Madison, Wisconsin. On that day the County Attorney of Buffalo County, Nebraska, the Sheriff of Buffalo County, Nebraska, and the Chief of Police of Kearney, Nebraska, took the petitioner from the Madison, Wisconsin, jail and during the next two days transported the petitioner and his co-defendant by car to the Buffalo County jail in Kearney, Nebraska. During the trip the petitioner was advised that he was facing a serious charge and that the community was "extremely agitated and up in arms about the incident." Upon arriving at Kearney, Nebraska, they took a circuitous route by way of off streets and alleys to the jail, purportedly in order to protect the petitioner against possible personal harm. On October 23, 1964, the petitioner was taken before the District Court of Buffalo County, Nebraska, and was then informed that he was charged on a county complaint with assault with intent to rape, armed robbery, and kidnapping. At such time counsel was appointed at the request of the petitioner. On Saturday, October 24, 1964, the petitioner was arraigned, whereupon he pleaded guilty to two counts and was sentenced to a term of 15 years for the crime of assault with intent to rape and to a term of 20 years for the crime of forcible robbery, such sentences to run consecutively and not concurrently. The petitioner has fully exhausted his state remedies regarding the issues presented here. See Nicholson v. Sigler, 181 Neb. 690, 150 N.W.2d 251 (1967), and State v. Nicholson, 183 Neb. 834, 164 N.W.2d 652 (1969).

The legal issues presented are as follows:

A. Whether the information, complaint, and warrant issued in conjunction with petitioner's arrest and prosecution are void and wholly without effect by virtue of their violation of the Constitution of the United States and therefore deprived the trial court of jurisdiction over the person of the petitioner and render the petitioner's conviction thereon in violation of said Constitution.

B. Whether the arrest and removal of the petitioner from the State of Wisconsin to the State of Nebraska was in violation of the Constitution of the United States and was therefore insufficient to confer jurisdiction over the person of the petitioner in the state court.

C. Whether or not the petitioner's court-appointed counsel failed to render petitioner effective assistance and/or was incompetent in his representation of petitioner's state court criminal proceedings and therefore caused petitioner to be deprived of effective assistance of counsel in all stages of his state court proceedings in contravention of the express mandate of the Constitution of the United States.

D. Whether the plea of guilty entered by the petitioner in the state court criminal proceedings was knowingly and voluntarily made or whether the same was the product of misunderstanding, coercion, inducement and/or misrepresentations and was therefore in violation of the Constitution of the United States.

E. Whether the sentence conferred on petitioner was a result of prejudice on the part of the trial court, improper presentence investigation which deprived petitioner of his constitutional rights to cross-examine witnesses against him, and/or whether said sentence constituted cruel and unusual punishment, all in violation of the Constitution of the United States.

F. Whether the totality of the circumstances surrounding petitioner's conviction and commitment to the State Penal and Correctional Complex was such as to deprive petitioner of due process of law in violation of the Constitution of the United States.

In order properly to consider these legal issues it is appropriate first to set out the legal bases upon which a conviction following a guilty plea may be challenged. It is elementary that "a plea of guilty, knowingly and understandingly made, waives all non-jurisdictional defects and defenses and equates with an admission of guilt." Cantrell v. United States, 413 F.2d 629, 632 (C.A. 8th Cir. 1969). Therefore, any attack upon a conviction following a guilty plea, which attack is on a ground other than jurisdictional, must be directed against the voluntariness of that plea. Further, when a guilty plea is entered by an accused who is represented by counsel, that guilty plea is deemed to be valid unless it can be demonstrated that counsel's assistance was incompetent and ineffective. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

To determine fully the voluntariness of petitioner's guilty plea it is necessary to consider all the relevant circumstances and assess the quality of counsel's assistance.

The petitioner alleges that two factors fatally affect his guilty plea in this case. First, the petitioner claims that because of the conditions of his journey back to Nebraska from Wisconsin and the statements made to him by his court-appointed attorney and others and his attorney's failure to dispel his resulting fears, the petitioner's plea of guilty was involuntary as the product of coercion and fear. Second, the petitioner alleges that his court-appointed counsel failed adequately to investigate the facts and law and specifically failed to investigate a possible defense of insanity so as to render the representation a mockery of justice and shocking to the conscience. Kress v. United States, 411 F.2d 16, 22 (C.A. 8th Cir. 1969).

The petitioner testified that after he was taken from jail in Wisconsin by the sheriff, chief of police, and county attorney, and during his trip to Kearney, Nebraska, he and his co-defendant Maddox were repeatedly told that the community of Kearney was "up in arms" over the crimes with which the petitioner and his co-defendant were charged. Additionally, the petitioner testified that they were advised that a charge of kidnapping awaited them in Kearney which carried the death penalty and that the sheriff had taken a gun away from one person. Upon reaching the outskirts of Kearney, the petitioner testified that they passed a Nebraska highway patrolman who gave them a "high sign." Upon entering Kearney they took a circuitous route through back streets and alleys to reach the jail. The petitioner testified that after C. Morris Gillespie was appointed as counsel, he also advised the petitioner that the town was "up in arms" over the incident.

Attorney Gillespie by his testimony agreed that he had advised the petitioner that the town was "up in arms", because he felt it was his duty to "tell them where they stood." Gillespie testified that there was no question in his mind that a fair and impartial trial could be had in Kearney so he did not discuss with the petitioner the possibility of a change of venue for trial.

Apparently, no physical threats of any kind were made to the petitioner during his incarceration in the Buffalo County jail or during his trip there from Wisconsin. The following stipulation was entered into by counsel concerning conversations and incidents during the automobile trip from Wisconsin to Kearney, Nebraska:

" * * * (T)hat Thurston Nelson and Lloyd L. Frank, if called as witnesses, would testify that they each informed the Petitioner that he was facing serious charges, including that of kidnapping which carried the death penalty in Nebraska; but that they told him he would be treated fairly; that the witnesses do not recall having told the petitioner something to the effect that everybody knew he was guilty; nor do they recall having told the petitioner that some person in the community was carrying a gun as a result of the incident; however, the wit-

nesses would neither admit nor deny that statements to such effect might have been made by one or both of them. It is further stipulated that the Petitioner was told something to the effect that the community was extremely agitated and up in arms about the incident and that, for this reason, it was their intention to enter Kearney, Nebraska, by way of a circuitous route by way of off streets and alleys in order to protect the Petitioner against possible personal harm * * * "

■ One of the major problems of this case is the fact that the crime and resulting court action occurred approximately six years before the date of the evidentiary hearing in this court. During this passage of time attorney Gillespie's memory of the incident has faded and all of his records of his representation of the petitioner were disposed of when he moved his residence and practice to another Nebraska community where he is presently serving as county judge. Therefore, this court is faced with a situation where many of the petitioner's statements are uncontroverted. This is not because the petitioner's statements are necessarily true but because any facts which could be used to contradict the petitioner's testimony have been lost by the passage of time. The court is of the opinion that, given the facts as presented, the petitioner's plea of guilty was not involuntary as the product of coercion and duress. While it is true that the petitioner was advised on more than one occasion that the town was "up in arms" the court finds that the petitioner has not carried the burden of persuasion that these statements caused him to plead guilty involuntarily. The sheriff and chief of police, while apparently advising the petitioner of the community's agitation, also assured the petitioner that he would be treated fairly. The petitioner did not inform his court-appointed attorney, Mr. Gillespie, of his concern for his own safety and, while Mr. Gillespie did also advise the petitioner of the town's being "up in arms," Mr. Gillespie was of the opinion

that the petitioner could receive a fair trial in Kearney. The court finds that the petitioner's plea of guilty was voluntary and not motivated by fear of petitioner's personal safety in the Buffalo County jail.

■ The petitioner strongly urges that his plea of guilty was involuntary because he was represented by ineffective and incompetent counsel. It is this contention that causes the court greatest concern.

The petitioner testified that prior to arraignment Mr. Gillespie, his court-appointed attorney, visited the petitioner on two occasions, spending a total of 20 to 30 minutes with him. During the first visit the petitioner and Mr. Gillespie discussed the charges with special emphasis on the charge of kidnapping, which carried a possible death penalty. Mr. Gillespie discussed the range of penalties possible under the various charges and it was during this visit that Mr. Gillespie told the petitioner that the town was "up in arms." There is considerable uncertainty as to what next occurred during this meeting. The petitioner testified that he informed Mr. Gillespie that he had been examined in a Wyoming mental hospital with regard to previous sexual offenses and inquired as to the possibility of entering a plea of not guilty by reason of insanity. The petitioner testified that Mr. Gillespie then asked him if he knew "the difference between right and wrong" and upon receiving an affirmative reply Mr. Gillespie advised the petitioner to plead guilty.

Conversely, Mr. Gillespie testified on cross-examination to the following:

"Question. Do you recall discussing the defense of insanity with Mr. Nicholson?

Answer. I don't remember sanity entering into the conversation.

Question. You don't recall him indicating to you that there was—that he had previously been in a mental institution?

Answer. No.

Question. You don't recall him questioning you about the defense of insanity?

Answer. No.

Question. So as far as you remember you never discussed any defenses at all?

Answer. I don't believe so."

It is true that on April 11, 1962, the petitioner was admitted to the Wyoming State Hospital, Evanston, Wyoming, for a period of 60 days for purposes of observation and examination by order of the judge of the Second Judicial District, Wyoming. This admission for the purpose of examination was with regard to an information filed against the petitioner in the Second Judicial District of Wyoming charging two counts of carnal knowledge and unlawful touching of a female child under the age of 18 years. The final diagnosis resulting from petitioner's mental examination was that he was a sexual deviant, sexual sadist, and pedophile with a severe predisposition and impairment and an extremely poor prognosis. The petitioner was released by complete discharge as "without psychosis, not insane this date." The recommendation of the admissions staff conference regarding the petitioner was as follows:

"It was recommended that a letter be written to the court, advising them that we find subject to be without psychosis—not insane, further, that we find him to be dangerous and we would recommend that he not be allowed to go free. Subject is not motivated for psychiatric help at this time and we have nothing to offer him at this hospital inasmuch as he would require many years of intensive treatment."

Again, due to the passage of time and Mr. Gillespie's failure of memory regarding the matter, there is uncertainty as to whether Mr. Gillespie was in fact aware of the petitioner's prior mental examination in Wyoming. Although Mr. Gillespie testified that he did not recall the subject of "insanity entering in-to the conversation," he also testified on direct examination that "Mr. Nicholson did acknowledge the fact that he had been in some sort of trouble in Wyoming and another incident prior to that I believe, although I don't recall just where the other incident was; but it seems to me that our discussion led to a previous charge of rape or some form of it." Mr. Gillespie, therefore, knew that the petitioner had been charged with a sexual offense in Wyoming and in discussing that crime it is quite likely that Nicholson would have informed his attorney of the mental examination associated with it. The court finds that although Mr. Gillespie has no present recollection of any discussion concerning the petitioner's prior mental condition, the petitioner's testimony must be considered as proving that Gillespie had notice of the petitioner's prior mental examination.

The petitioner argues that this knowledge of petitioner's mental history on the part of the attorney gave sufficient notice to the attorney so as to require him to investigate fully this possible avenue of defense. The petitioner further argues that the advice of the attorney to plead guilty given without fully investigating the possibility of a plea of not guilty by reason of insanity was incompetent and rendered attorney Gillespie's assistance ineffective and violative of the Sixth Amendment. The court, while critical of the representation afforded petitioner Nicholson, determines that it cannot agree with the thrust of these allegations.

Mr. Gillespie testified at several points during the evidentiary hearing that upon first visiting the petitioner after his appointment by the court, the petitioner was "anxious * * * to enter a plea of guilty as charged." Although the petitioner argues that the desire to enter a guilty plea was motivated by fear, the court has previously found that the plea was not the subject of coercion or duress. Therefore, the court is of the opinion that Mr. Gillespie was confronted with a situation where his defendants were immediately desirous of pleading guilty and

only incidentally was the subject of petitioner Nicholson's mental history mentioned. The court feels that the better course of conduct for Mr. Gillespie to have undertaken would have been a thorough investigation of the petitioner's mental state with a view toward the possibility of entering a plea other than guilty. However, in this particular case, the court finds that failure to do so did not violate the requisite standard. The Court of Appeals for the Eighth Circuit has allowed the adequacy of counsel's representation to be attacked successfully "only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court." Cardarella v. United States, 375 F.2d 222, 230 (C.A.8th Cir. 1967); Kress v. United States, 411 F.2d 16, 22 (C.A.8th Cir. 1969).

Here, the petitioner's court-appointed attorney did not seek to persuade the petitioner to plead guilty. The petitioner desired to plead guilty from the beginning and, according to Mr. Gillespie, was mainly interested in having the charge of kidnapping dismissed. This Gillespie accomplished. The court shall assume, where there is no direct testimony on this matter, that petitioner Nicholson did not have a copy of his psychiatric report from Wyoming in his possession during his incarceration at the Buffalo County jail and therefore was unable to show this report to his attorney. The petitioner testified only that he told Gillespie of his mental examination in Wyoming and Gillespie testified that he remembered nothing concerning the entire incident. The period of incarceration was too brief to allow Mr. Gillespie to obtain a copy of the report from Wyoming and therefore the court finds that Mr. Gillespie did not have personal knowledge of the contents of the psychiatric report. The court is of the opinion that the better practice would have been for the attorney to hold up the swift progress of the proceedings in order to investigate fully petitioner's mental history and specifically to obtain a copy of the Wyoming report. However, the court feels it is also necessary to take into account the contents of that report and the effect it would likely have had on the advice of the attorney before a finding of ineffective assistance of counsel can be made.

The Wyoming mental examination report specifically made the finding that Nicholson was "not insane" at the time of the making of the report, although he did have serious and deep-seated psychological problems. At most, the report was neutral on the question of insanity in that Mr. Gillespie was not bound by its findings. Mr. Gillespie could have sought a further mental examination of the petitioner in trying to establish the basis for legal insanity. The report of the mental examination did not of itself prove legal insanity; on the contrary, the report declared that Nicholson was sane.

The petitioner argues that Brubaker v. Dickson, 310 F.2d 30 (C.A. 9th Cir. 1962) is squarely in point with the case at hand and its principles should be applied to afford habeas relief. The court does not agree. In Brubaker the petitioner was tried and convicted of murder in the first degree. Petitioner Brubaker was assisted during trial by counsel who presented little evidence in the way of defense and no evidence in the way of mitigation. Evidence outside the trial record showed that the petitioner had a history of organic brain disease and that the petitioner "while not 'insane,' had a compulsive personality marked by strong emotional instablility. There was substantial evidence of hypersensitivity to alcohol; and the record established that immediately prior to the homicide the appellant had drunk heavily." Brubaker, supra, p. 33. Further, "[t]here was competent medical opinion to support the view that, in the light of these and other factors, appellant was incapable of entertaining the specific intent required for first-degree murder at the time and in the circumstances of the homicides." Id. It was shown that

trial counsel was aware of Brubaker's history of brain disease and his heavy drinking on the night of the homicide; however, counsel made no investigation or inquiry as to this background nor did he arrange for an examination by a psychiatrist. The Ninth Circuit Court of Appeals, recognizing that determining the effectiveness of the assistance of counsel is "inevitably a question of judgment and degree," held that counsel's representation was inadequate in that "the defenses available but not presented by trial counsel appear to have been substantial." Id., pp. 37, 38.

In the present case the petitioner, of course, did not go to trial. Rather, he was anxious to plead guilty from the time Mr. Gillespie first visited him. While the court agrees that the attorney should have more fully investigated the facts of the case and should not have been so quick to allow Nicholson to enter a plea, failure to so have done does not constitute a situation that shocks the conscience of the court. Other than showing that he had previously been examined at a Wyoming mental hospital and that he has an unfortunate background of committing sexual crimes, the petitioner has not shown that he actually did have a substantial defense to the crime charged. In *Brubaker* the petitioner made a substantial showing that he could not have formed the specific intent requisite for first degree murder; such is not the case here.

The District Court of Buffalo County, in denying the petitioner's application for post-conviction review, found that Mr. Gillespie was competent and considered his representation of the petitioner to have been adequate. Although the state court based its findings mainly on the attorney's professional background and experience before the court, the state judge did make it clear that he felt that Mr. Gillespie's handling of this particular case was proper. This court does not feel constrained to upset that determination. The court finds that Mr. Gillespie's representation of the petitioner was adequate under the existing standard and that petitioner Nicholson's plea of guilty was voluntarily and intelligently entered.

As the court has found the petitioner's guilty plea to have been voluntary and counsel's representation to have met the requisite standard, the remaining issues are of no merit and will be disposed of summarily. With respect to the petitioner's attack on the manner of extradition, the Supreme Court of Nebraska properly found that the claim was of no consequence and could not be made by way of collateral attack. Nicholson v. Sigler, 181 Neb. 690, 150 N.W.2d 251 (1967), citing Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). The other issues all concern the guilty plea, adequacy of counsel's representation, and matters that were validated by a voluntary plea. Under the totality of the circumstances, the court finds that the petitioner was afforded due process of law and his petition for writ of habeas corpus must be denied.

An appropriate order will be entered this day.