**James B. CRISMON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 72 C 767 (2).**

United States District Court, E. D. Missouri, E. D.

March 28, 1974.

---

William S. Ferguson, Jr., Bernard Passer, Lyle M. Hanson, S. Richard Beitling and James M. Martin, Kansas City, Mo., for plaintiff.

Donald J. Stohr, U. S. Atty., Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

James B. Crismon has moved under Section 2255, 28 U.S.C., to vacate judgments and sentence.

Following his conviction on five counts of misapplying bank funds in violation of Section 656, 18 U.S.C., on two counts of fraud and fraudulent and false statements in violation of Section 1005, 18 U.S.C., and one count of mail fraud in violation of Section 1341, 18 U.S.C., petitioner was sentenced to an aggregate term of ten years imprisonment (consecutive terms of five years on Counts I and II, and five years each on the remaining counts to run concurrently with the terms imposed on Counts I and II) and a fine of $5,000 on Count VIII. The judgments of conviction were affirmed without opinion May 20, 1972, on direct appeal, and certiorari was denied by the Supreme Court.

The motion to vacate sets forth as grounds therefor (1) that the evidence was insufficient to warrant conviction on any of the eight counts, (2) that petitioner has recently discovered proof of perjured testimony by two Government witnesses, which was either known or should have been known to be perjury by the prosecution, (3) that the Court erred in admitting prejudicial and inadmissible evidence, (4) that petitioner's retained counsel gave him ineffective assistance, and (5) that when the investigation allegedly centered on him, petitioner was not advised of his right to remain silent or to have counsel present. An evidentiary hearing was held.

The "evidence" of which complaint is made is the one-word statement of witness June Saltz (who with others, accompanied petitioner on a pre-indictment trip the government contended evidenced intent to flee) that she was petitioner's "mistress." The matter was not further developed nor referred to thereafter at any time.

██ Both the asserted insufficiency of the evidence and the alleged prejudice resulting from the testimony to which petitioner takes exception were extensively briefed and argued at length on petitioner's direct appeal. We find no error of constitutional proportions or otherwise of which petitioner may again

complain. A motion to vacate is not a vehicle for a second appeal respecting matters which have been reviewed and found lacking in merit on the original appeal. Sykes v. United States, 8 Cir., 341 F.2d 104, 105; Cardarella v. United States, 8 Cir., 351 F.2d 443, 447; Weaver v. United States, 8 Cir., 418 F.2d 475, 476.

Petitioner's complaint respecting the allegedly perjurious testimony is equally without merit, particularly in a post-conviction proceeding. The testimony in question related to the issue of whether petitioner had improperly certified the check (bill of exchange) involved in Count VI. The facts, as developed in the Section 2255 hearing, are that a personal check of Orell Harris was tendered to John Williams of the Internal Revenue Service, as payment for taxes owing by Harris, but that Williams would not release the tax levy lien on certain equipment belonging to Harris unless payment was made either by a cashier's check or a certified check; that petitioner thereupon directed and authorized Dwight Crader, an attorney, to write on the back of Harris' check whatever was necessary to cause it to be certified by the bank of which petitioner was president; that Crader wrote the words "Payment Guaranteed. James B. Crismon, President, First State Bank of Bonne Terre;" that immediately thereafter the signature "James B. Crismon" was written by petitioner and the check was then delivered to Williams; and that petitioner, Harris, Williams and Crader were all present while the foregoing took place. In this connection we credit Crader's testimony that petitioner affixed his signature after Crader had complied with petitioner's direction to place the necessary language on the back of the check for purposes of certification.

On direct examination at the trial Williams had indicated that the entire endorsement on the check was written by petitioner, but on cross-examination he clarified his testimony by stating that what he saw was petitioner writing something and then handing him the check with the entire endorsement, including the signature, on the back of the check. The discrepancy in his testimony was for the jury. We find no intentional false swearing either by Williams or by Harris, certainly none known to the prosecution. And for purposes of the offense charged in Count VI, it made no difference whether the words, other than the signature, were personally written by petitioner or by an amanuensis on his behalf and at his direction. We also note that the alleged perjury could not have been newly discovered, inasmuch as petitioner personally knew what he had written and authorized to be written and he testified on his own behalf at the trial.

Next we consider the contention that petitioner received ineffective assistance from his retained counsel, Charles Shaw. Petitioner complains that Shaw devoted an insufficient amount of time in consulting with him and in investigating the merits of the charges, arguing that more intensive investigation would have developed more exculpating evidence. He also second-guesses Shaw's trial strategy and tactics. We find no substance to this point.

Shaw has specialized for many years in the defense of persons charged with crime. He manifested at the hearing his sincere disappointment, both in failing to persuade the jury that petitioner was innocent, as well as in his lack of success in his subsequent representation of petitioner (post-trial motions, appeal to the Court of Appeals, certiorari to the Supreme Court). He and his office associates devoted hundreds of hours to the preparation of the defense and in the investigation of pertinent matters, of which some 30 or 40 hours prior to the 9-day trial were spent by Shaw in conferring directly with petitioner, to say nothing of the additional time spent for this purpose during the trial itself. He skillfully examined and cross-examined the witnesses. At no time did peti-

tioner indicate that he felt Shaw's defense to be inadequate until this proceeding was instituted. On the contrary, he expressed gratification with Shaw's work, and this is corroborated by the fact that Shaw handled the appellate work.

Aside from his general complaint that Shaw did not sufficiently investigate the case, petitioner attacks Shaw in two specific instances. One relates to Shaw's decision (concurred in by petitioner and petitioner's wife) not to call Larry Crismon, petitioner's son, as a witness. Larry was involved in two counts, VI and VIII. Count VI pertains to the allegedly improper use of credit cards, while Count VIII concerns a loan of $55,000 made to Larry Crismon. Being very much afraid the prosecution would subpoena Larry, Shaw told him to leave town. Instead of doing so, he was arrested the first day of the trial on a bad check charge with resultant publicity.

The decision respecting Larry was a matter of trial strategy and tactics. It appeared to Shaw that Larry, a very volatile and emotionally unstable individual, would have unintentionally strengthened the government's case, particularly on Count VIII. And Larry's testimony at the Section 2255 hearing demonstrates that Shaw's fears were well-founded. In addition, there had been considerable newspaper publicity about Larry—an arrest for non-support, difficulties in the tavern he operated, and bad check charges—and Shaw believed the jury's appraisal of Larry and his temper explosions might adversely affect the image of petitioner he sought to paint as a hard-working, honorable man. Petitioner now argues that because Shaw had also represented Larry in his legal problems, there was a conflict of interest. We do not agree. Petitioner further contends that in causing Larry to stay away from the court-room, Shaw might have been motivated by a desire to prevent Larry from incriminating himself to the detriment of petitioner. We find no basis whatever for this serious reflection upon Shaw's integrity.

As noted by the Court of Appeals in Robinson v. United States, 8 Cir., 448 F.2d 1255, 1256, "Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used." Even poor judgment as to strategy "cannot support a belated claim of ineffective counsel."

Finally, petitioner seizes upon the tongue-in-cheek remark of Shaw (out of the hearing of the jury at the start of the trial when the government dismissed Count V), to the effect that Count V was the only one to which he had a defense. The comment was jocular and recognized as such when made by both the Court and government counsel. This statement in no wise convicts Shaw of inadequate representation of petitioner. Rather, it simply demonstrates that joking remarks should be made off the record, if at all.

The standards for determining whether a claim of ineffective assistance of counsel is justified have been stated in numerous cases. See, among others, Robinson v. United States, supra; Cardarella v. United States, 8 Cir., 375 F.2d 222, 230. The petitioner must show that his counsel has been so grossly incompetent as to blot out the essence of a fair defense. In this case, petitioner has fallen far short of such a showing. In our judgment, there is no reasonable basis for the charge that Shaw failed in his professional duty to petitioner.

■ The remaining ground of the motion is an assertion that petitioner "was never advised of his right to remain silent or to have counsel present when the investigation concerning alleged criminal activities centered on him." Even assuming it is available for collateral attack, there is an entire failure of proof as to this ground other than petitioner's testimony that he was not given a Miranda warning. Not only is there no evidence that the government's investigation of the bank's affairs had centered on petitioner, but there is no showing that petitioner made incriminating statements. And certain-

ly he was not in custody at the times complained of. After his arrest, and before his release, his counsel was present and petitioner was not interrogated at all.

The motion to vacate is without merit. Accordingly, it is hereby ordered that said motion be and the same is hereby denied.