**STATE of Missouri, Respondent,**

v.

**George SCHAFFER, Appellant.**

**Nos. 48680, 54621.**

Supreme Court of Missouri, Division No. 2.

April 13, 1970.

Motions for Rehearing or to Transfer to Court En Banc Denied May 11, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Warren Grauel, St. Louis, for appellant.

FINCH, Judge.

Defendant was convicted in 1960 of forcible rape and was sentenced under the Second Offender Act to imprisonment for ninety-nine years. That conviction was affirmed on appeal. State v. Schaffer, Mo., 354 S.W.2d 829. Thereafter, defendant filed a pro se motion to set aside the judgment and sentence under Supreme Court Rule 27.26 (all references are to V.A.M.R.). Counsel was appointed and the motion was argued and overruled. An appeal was taken and this court affirmed the judgment of the trial court. State v. Schaffer, Mo., 383 S.W.2d 698.

Thereafter, in accordance with Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33, and Swenson v. Donnell, 8 Cir., 382 F.2d 248, the judgment affirming defendant's conviction was set aside on the basis that he had not been represented by counsel on appeal, and the case was reinstated on this court's docket. In addition, we granted leave to defendant to file another motion to vacate under amended Rule

27.26. Such motion was filed by defendant and counsel was appointed to represent him. An evidentiary hearing was held after which the motion to vacate was overruled. Defendant appealed therefrom, and that appeal was consolidated with the reinstated direct appeal from the original conviction. Counsel was appointed to represent defendant in both appeals and has filed a brief and argued the case orally. We affirm.

The facts as disclosed by the transcript of the original trial are detailed at some length in the original opinion reported at 354 S.W.2d 829. Consequently, we recite facts herein only to the extent necessary to decide the issues briefed on this consolidated appeal.

With reference to the direct appeal from the original trial, defendant's brief does not assert any alleged error not considered when his appeal was heard previously and does not cite any cases which he claims establish that the original decision affirming defendant's conviction is erroneous in any respect. All that defendant's brief urges with respect to the original appeal is that the court reexamine its opinion on the issue of whether the evidence was sufficient to make a submissible case and to sustain the conviction for rape. We have considered that argument and have reviewed the original transcript and again conclude that the evidence was sufficient to sustain the conviction. Accordingly, in case number 48680 we reiterate what was said in 354 S.W.2d 829.

Defendant filed a detailed motion to vacate under amended Rule 27.26. Counsel was appointed and subsequently the motion was amended to add additional asserted grounds for relief. Defendant filed a motion to disqualify Judge J. Kirkwood, who had presided at the original trial, because he desired Judge Kirkwood to be a witness. Subsequently, an evidentiary hearing was held in which defendant was given the opportunity to testify fully as well as to call other witnesses he desired. After the hear-

ing, Judge Dowd entered findings of fact and conclusions of law and pursuant thereto overruled defendant's motion to vacate. The appeal therefrom is case number 54621.

In this appeal defendant briefs two points, viz.: (1) He was denied constitutional rights in that he was not afforded adequate and effective assistance of counsel in the preparation and trial of the charge of rape, and (2) the court erred, when considering the motion to vacate, in refusing to sustain defendant's motion for a physical examination to verify his contention that because of an injury in 1948 he has been unable to discharge semen and hence could not have been responsible for the male spermatozoa found in the vagina of the prosecutrix. In reviewing these questions we are "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Rule 27.26(j); Crosswhite v. State, Mo., 426 S.W.2d 67.

With respect to the first contention that defendant was denied effective assistance of counsel, the trial court found as follows: "As to the defendant's contention that he was denied the effective assistance of counsel the Court finds that Allen Roth represented the defendant in a competent and creditable manner. The Court finds that Mr. Roth had several conferences with the defendant in the city jail and that Mr. Roth personally investigated the neighborhood where the offense took place. That Mr. Roth hired a police officer to work on his own time to investigate the case and took a very detailed deposition of the victim; that Mr. Roth personally defrayed the cost of the investigation and the costs of the deposition. That Mr. Roth's conduct during the trial was vigorous and forceful and demonstrated competency as a defense attorney." We proceed to consider whether these findings are clearly erroneous.

■ General complaint is made that the trial court should not have appointed as attorney for defendant a lawyer who had been admitted to practice a little over two

years previously and whose practice was primarily civil. However, that is not the basis for determining whether defendant had effective legal representation. The test is in performance, not years of experience.

■ Contrary to counsel's advice, defendant took the stand as a witness and as a result the jury learned of his prior criminal record, including a sentence of ten years on a charge of second degree murder. Out of that fact arises defendant's first specific charge of inadequate legal representation by Mr. Roth. He claims that counsel was ineffective because he failed to call a nun known as Sister Gilda as a character witness in order to rehabilitate defendant with the jury.

Sister Gilda was a member of the Order of Helpers of Holy Souls. Defendant worked for them after his release from prison and was so employed when arrested on the charge of rape. After Mr. Roth was appointed, defendant sent him to see Sister Gilda to seek corroboration by her that at the hour when he was charged with grabbing prosecutrix and taking her into his house, he actually was on assignment by Sister 'Gilda at the home of Moses Curry, a blind man, cutting his hair and preparing his supper. Sister Gilda told Roth that she kept no record of work schedules and could not help defendant on that question. Nevertheless, defendant now claims that counsel should have called her as a character witness. Pertinent to this issue, Roth testified at the 27.26 hearing as follows:

"Q Did he ask you to call, for you to get any character witnesses?

"A I recall him asking about Sister Gilda, but when I interviewed her at substantial length she couldn't contribute anything.

"Q Well, why didn't you get any character witnesses? Why didn't you bring in any for him?

"A To the best of my knowledge he only asked about Sister Gilda, and as I said, counselor, I talked to her at, oh, I would say better than an hour, and there was nothing she could contribute.

"Q Well, did you ask—did you talk to Sister Gilda about this man's character or reputation?

"A Yes, I did.

"Q And what was her—

"A She indicated she didn't know enough about him.

"Q She didn't know too much about him?

"A That's right."

If Sister Gilda had been called as a witness and had stated to the jury what she told Mr. Roth, she would not have been effective as a witness to rehabilitate him. Certainly, the failure to call her does not establish that Mr. Roth's services were inadequate and ineffective.

■ Defendant's second specific complaint about the services of his attorney relates to two aspects of his closing argument to the jury. In the first place, he claims to have been prejudiced by statements of counsel concerning the fact that defendant took the stand, the risks therein involved, and that he had advised defendant against doing so. The portions of counsel's argument containing the allegedly prejudicial comments were as follows:

"As you know, I was appointed in this case, and I tried to do my best—I had a rough job, it is a tough job, and I would like to say that if I have offended you at any time, or if I have done something you think I should not have done, or if I let you down when you compare me to Perry Mason, I don't blame you— please blame me for that—put the blame where it lies, and not on my client. Anything I may have to say about this, there is where the blame lies, on me, and not my client, if I have done anything to offend you."

Later, Mr. Roth said: "Now, Mr. Koster asked you who you will believe? We admittedly started out with a couple of strikes against us when we put Mr. Schaffer on the stand—I am not going to elaborate on that; you have heard enough about that. Who will you believe? Just because the man has had a bad background, that is not all the evidence there is in the case, you have to take into consideration all the evidence you heard in the case—you are going to try this man on all the evidence you heard in this case. Bear that in mind, please.

"I submit to you that Mr. Schaffer did not have to take the stand, he chose to do so voluntarily—

"MR. KOSTER: (interrupting) I will object to that as immaterial and irrelevant.

"THE COURT: All right, proceed; go ahead.

"MR. ROTH: But he did so, knowing full well—I advised him on the dangers of it—notwithstanding, he came to you and told you the truth, the way he said it happened."

Still later, counsel said: "Believe me, I want this man to get everything that he is entitled to—everything in the line of justice that is coming to him—even though he is maybe punch drunk, or has cauliflower ears, he is still a citizen of Missouri, and he might just possibly have been telling the truth, and the State of Missouri has not shown otherwise. Is there a doubt in your mind? Is that your doubt? Is it? Don't decide this thing on whether the man's skin is black, don't say, 'He is black and she is white.' That is not the way to go about it. You have to remember, this a case of justice—."

Defendant's brief argues that these statements by defendant's counsel could have been construed by the jury as indicating that the state's evidence was unassailable and that the effect was to destroy the credibility of defendant with the jury. We do not so interpret it. Counsel by his argument could not change the facts. He was confronted with a difficult case. However, he sought by his remarks to convey the impression of being honest and forthright with the jury, recognizing that testimony of defendant's prior criminal record was detrimental, but that nevertheless defendant voluntarily had taken the stand to tell his version to the jury. He asked the jury not to decide against defendant because he was black or because of his prior record, but to accord him the rights of a citizen and not convict when there was a doubt as to defendant's guilt.

■ Defendant's second complaint regarding counsel's closing argument is that he stressed failure of the evidence to prove penetration and intercourse by defendant whereas, according to defendant's brief, counsel should have argued the defense of consent. The gist of this contention is that counsel should have known such defense would not be accepted by the jury in view of the fact that the two parties were together in the house for nearly seventeen hours, several of which were spent in bed together nude, that there was a positive smear test showing presence of male spermatozoa in the vagina of prosecutrix and that both parties simply said that they had no knowledge or recollection of intercourse.

A consideration of this contention requires brief reference to what the transcript shows on these questions of intercourse and consent. There was no direct evidence of penetration and intercourse. The state offered evidence of the presence of male spermatozoa in prosecutrix' vagina when she was examined at the hospital following the night spent at defendant's apartment, but prosecutrix testified that she had no recollection of intercourse with defendant. She said that he hit her and she was unconscious for a time, but except for such period she had no recollection of intercourse. Defendant claimed to have been drinking that evening and said he went to bed alone in his room after having prosecutrix go to bed in the other bedroom. He claimed that he awoke during the night and

that when he awakened prosecutrix was in bed with him. However, he stated repeatedly that he had no recollection of intercourse. The evidence was that the spermatozoa could remain in the vagina for from 24 to 48 hours, which, of course, covered the time prosecutrix was in defendant's apartment, plus some period before that.

On the question of consent by prosecutrix, there also was no direct testimony. There was no proof from prosecutrix of consent. More importantly, defendant did not claim or testify that prosecutrix had consented to intercourse. In fact, he claimed no knowledge or recollection of intercourse.

To argue justification based on consent, counsel would have urged something not supported or claimed by defendant's own testimony. On the other hand, defendant claimed absence of intercourse (lack of any recollection thereof) and prosecutrix similarly testified. Under such circumstances, may counsel be found to have rendered constitutionally inadequate and ineffective assistance of counsel for having failed to argued that there was consent for the intercourse and that under Instruction 4 it could not have been rape? We hold that he cannot. He could not very well have argued both lack of penetration and that the intercourse was with consent. To so argue, he would have been arguing that the penetration which didn't occur was not rape because it was consented to. Counsel necessarily selected which to argue. The state of the evidence justified his decision.

The evidence supports the trial court's conclusion that counsel's handling of defendant's case was competent and diligent. Mr. Roth did spend much time in investigation and preparation. He talked to prospective witnesses and spent over $400 of his own funds for depositions and investigations. He sought the advice of experienced criminal lawyers. He vigorously cross-examined witnesses and made frequent objection to testimony and exhibits offered by the state. Judge Kirkwood, who presided at the original trial, testified at the 27.26 evidentiary hearing that Mr. Roth conducted himself ably and gave defendant a very good defense. We conclude, from an examination of the transcript of the original trial and the transcript of the 27.26 hearing, that Judge Dowd's conclusion that defendant received effective assistance of counsel is not clearly erroneous. As we pointed out in Crosswhite v. State, supra, 426 S.W.2d l. c. 70, quoting from United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746: "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" We most definitely are not left with the feeling, after reading the record, that a mistake has been committed.

Furthermore, the rule established in many cases in the federal courts is that the standard by which effectiveness of counsel is measured is whether his actions or lack thereof made the trial a farce or a mockery of justice. Cardarella v. United States, 8 Cir., 375 F.2d 222, 230, cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176; Borchert v. United States, 9 Cir., 405 F.2d 735, 738, cert. den. 394 U.S. 972, 89 S.Ct. 1466, 22 L.Ed.2d 753; Johnson v. United States, 10 Cir., 380 F.2d 810, 812; cases cited in 17 Mod.Fed.Prac.Dig., Crim. Law, ☜641.13 (1). Under that test, defendant was not the recipient of inadequate and ineffective assistance of counsel. As the court said in Johnson v. United States, supra, 380 F.2d l. c. 812: "In every case a lawyer loses, it is possible, in retrospect, to say that some different strategy or procedure might have brought about a better result. But this is not sufficient to sustain a claim of ineffective assistance of counsel. To sustain such a claim we would have to be able to conclude that the representation was such as to make a trial a mockery, a sham or a farce."

The final point briefed and argued on this appeal is that the court erred in the evidentiary hearing in November, 1968, when he denied defendant's motion for a physical examination to determine whether he was incapable at the time of the alleged rape to discharge semen and hence incapable of committing the offénse charged.

Actually, this point does not assert that the trial court in the original trial committed any error. Defendant made no request at that time for such an examination and no contention is made that this subject was even discussed by defendant with his counsel or that he requested counsel to seek a physical examination. Instead, he now seeks via the motion to vacate to relitigate his guilt or innocence by a physical examination to show what his physical condition was as a result of an injury in 1948 and that consequently in 1960 he could not have committed rape. We previously have held that a motion to vacate under Rule 27.26 is not a vehicle for relitigating the issue of guilt or innocence. State v. Worley, Mo., 383 S.W.2d 529 [10]; State v. Donnell, Mo., 387 S.W.2d 508 [6]. Furthermore, if, in fact, the 1948 injury had the effect which defendant now contends, he knew that in 1960 when his case was tried and he should have raised it then. We hold that the trial court did not err in overruling the motion for physical examination.

We affirm in both appeals.

All of the Judges concur.