Charles W. GARTON, Petitioner,

v.

Harold R. SWENSON, Respondent.

No. 18547–1.

United States District Court, W. D. Missouri, W. D.

Dec. 18, 1973.

David R. Freeman, Federal Public Defender, Thomas M. Larson, Asst. Federal Public Defender, Kansas City, Mo., for petitioner.

Stephen D. Hoyne, Asst. Atty. Gen., State of Mo., Jefferson City, Mo., for repondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

Petitioner, currently serving a life sentence imposed under the Missouri Habitual Criminal Act, was granted conditional federal habeas corpus relief in Garton v. Swenson 266 F.Supp. 726 (W. D.Mo.1967). Further proceedings were held and petitioner returns to this Court seeking additional relief.

### I.

On September 1, 1961, two men robbed the Farley State Bank in Farley, Missouri. Petitioner was arrested for that crime on October 28, 1961, in Hobbs, New Mexico, and was held for extradition to Missouri. At an extradition hearing held November 22, 1961, the District Court of Lea County, New Mexico, after hearing four witnesses testify as to petitioner's presence in Hobbs on the date of the robbery, released him and refused extradition. Later, on January 5, 1962, a second extradition hearing was held at which the State presented three eye-witnesses to the robbery who identified petitioner as one of the participants. The same four alibi witnesses again testified for the petitioner, but extradition was granted.

The evidence produced by the prosecution at trial is summarized in State v. Garton, 371 S.W.2d 283 (Mo.1963). The petitioner's evidence in defense was the testimony of Mrs. Owen that on the evening of September 1, 1961, the petitioner helped celebrate her birthday in a lounge in Hobbs, New Mexico. The other witnesses who testified for the defendant at the extradition hearings were not called at the trial. After deliberating for thirty-one minutes, the jury returned a verdict of guilty. Petitioner's conviction was affirmed by the Supreme Court of Missouri. State v. Garton, *supra*. Petitioner's subsequent motion pursuant to Missouri Supreme Court Rule 27.26, V.A.M.R., was denied without a hearing. That denial was affirmed on appeal. See State v. Garton, 396 S.W.2d 581 (Mo.1965).

In petitioner's initial federal habeas proceeding, we found that petitioner was entitled to an evidentiary hearing in regard to the federal claims asserted in his state postconviction proceedings. We accordingly granted his petition, but stayed the issuance of the writ for ninety days to allow the state to provide petitioner with a proper Rule 27.26 hearing. Garton v. Swenson, 266 F.Supp. 726 (W.D.Mo.1967). A Rule 27.26 hearing was held, relief was denied, and that denial was affirmed. Garton v. State, 454 S.W.2d 522 (Mo.1970). Petitioner then filed a second federal habeas petition, giving rise to the current action.

### II.

The grounds alleged in petitioner's current federal habeas corpus petition were prepared without the assistance of his present appointed counsel and, as is not unusual, accurately paraphrased "the points relied on" in the brief filed in connection with petitioner's most recent appeal in the Supreme Court of Missouri. The opinion of that court in Garton v. State, 454 S.W.2d 522 (Mo.1970), accurately stated that petitioner complained about "one, the alleged use of

perjured testimony and the known suppression of evidence beneficial to Garton; two, alleged bias and prejudice and therefore the disqualification of the trial judge and the prosecuting attorney; three, the eight-pronged attack on his hired counsel to whom he now attributes 'incompetent defense' and ineffectiveness, and, fourth, the unconstitutionality of the statute governing the number of challenges of jurors in jurisdictions other than in cities of over 100,000 population."

 The Supreme Court of Missouri, *in accordance with principles articulated in* Hayes v. Missouri 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578 (1887), *and its progeny, properly concluded that the petitioner's attack upon the constitutionality of the juror challenge statute was untenable. The due process argument in regard to the alleged prejudice of the trial judge and the interest of the prosecuting attorney was found to be* "without substantial foundation or factual basis." *The trial judge's findings in that regard were expressly adopted by the Supreme Court of Missouri.* 454 S.W.2d at 526. *We find and conclude that those facts were reliably found.*

 The Supreme Court of Missouri further found and concluded that "there is no substantial factual support" for the claims that the state "knowingly and purposefully withheld evidence material to the defendant" and that "state's counsel knowingly used the perjured testimony of one of Garton's accomplices, Jack Streater." 454 S.W.2d at 526–527. The Supreme Court of Missouri also found that the statement given by Streater was not inconsistent with his testimony at trial and that "thus there is no demonstration of error in denying appellant the use of the written statement." We have carefully studied the various transcripts and find and conclude that the courts of Missouri properly found the relevant facts and properly applied applicable federal standards in denying petitioner relief in regard to these claims.

We recognize that petitioner's counsel makes a strong argument based on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), particularly in regard to the failure to produce Streater's written statement. Petitioner argues that the Supreme Court of Missouri's finding that there were "not even minor discrepancies" between Streater's trial testimony and his statement may not be fully supported by the record. Testimony at the Rule 27.26 hearing suggested that, in light of Streater's receipt of a bench parole following his trial testimony, a fully developed factual situation might present a question under Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). A substantial amount of hearsay testimony in that regard was presented and excluded at the Rule 27.26 hearing. Efforts made by both sides to locate Streater for that hearing were unsuccessful. Indeed, the delay in processing this case resulted from a mutual recognition that Streater's testimony and that of his wife was desirable.

Subsequent investigation, during the time the case pended in this Court, however, has established that Streater is now deceased and that his wife's testimony would not be of any material benefit under the circumstances. The lurking *Napue* question, therefore, does not come into focus because of an insufficiency of evidence.

In regard to the Brady v. Maryland question, it may be assumed that some inconsistencies do exist between Streater's written statement and his trial testimony; nevertheless, we are convinced that an application of *Brady*, consistent with the gloss placed on that case in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), requires that we find and conclude that petitioner's claims are not tenable.

### III.

The situation in regard to petitioner's Sixth Amendment claim of ineffective assistance of counsel is much more complicated. Petitioner's original *pro se* Rule 27.26 motion tracked very closely to the allegations of the motion for new

trial which was filed before his employed counsel withdrew from the case. The alleged ground of ineffective assistance of counsel, of course, did not appear in the case until after new counsel had been appointed to represent him in the second Rule 27.26 proceeding.

Petitioner's first amended Rule 27.26 motion, which was prepared with the assistance of appointed counsel, alleged that the petitioner was "denied the effective assistance of counsel in his original trial because of incompetency of his attorney, thereby depriving him of constitutional rights guaranteed by the Sixth Amendment." In denying that motion, the trial judge did not state any conclusions of law in regard to the ineffective assistance of counsel question. He did, however, include the following in his conclusory findings of fact:

> Movant was represented by two highly-qualified, reputable, skilled and experienced criminal trial lawyers of his own choosing who effectively represented Movant throughout trial.
>
> (1) Said attorneys vigorously and expertly tried and defended Movant.
>
> (2) Said attorneys ethically and professionally performed every requirement to see that Movant's rights were protected and that he had a fair and impartial trial.
>
> (3) The acts or omissions of counsel set forth under Movant's Amended Motion, Paragraph (P), subparagraphs 1 through 5, inclusive, are not such acts or omissions to preclude a fair and impartial trial with effective assistance of counsel.
>
> (4) Even though an acquittal was not obtained for Movant, he nevertheless had the effective assistance of professional and skilled lawyers throughout the trial.
>
> (5) Movant had a fair and impartial and speedy trial, although not a perfect trial (which, incidentally, is not required).[1]

On appeal, the Supreme Court of Missouri stated its view that petitioner's appeal "could be disposed of summarily" (454 S.W.2d at 524). It also concluded as "an indisputable fact . . . that in no event could Garton ever be found innocent or exonerated or discharged as he apparently believes" (Id. at 525). The Supreme Court of Missouri twice referred to petitioner's ineffective assistance of counsel claim as an alleged infringement of federal due process. (Id. at 525, 529). The Sixth Amendment was not mentioned in that opinion. Petitioner's claim was described by the Supreme Court of Missouri as "the very distasteful claim of infringement of due process by reason of ineffectiveness assistance of counsel" and "incompetent defense afforded him by his attorneys." In ruling that claim, the Supreme Court of Missouri concluded that "it would serve no useful purpose here to go through all these grounds in detail and demonstrate upon the transcripts their fallacies." Nor did it do so. The Supreme Court of Missouri simply concluded that Mr. Joseph A. Harrington, (now deceased) was "an experienced trial lawyer, well-known as a successful practitioner of criminal law" and that his associate, Mr. Commodore M. Combs, Jr., was "likewise, a well-known and respected lawyer." The Supreme Court of Missouri stated that "a reading of the two-volume record in the robbery case re-

---

1. The State trial judge also included in his findings of facts the following:

The only witness available and could be produced to testify at the trial was witness Tommie Louise Lee Owen, who did voluntarily appear and testify on behalf of Movant.

(1) Other witnesses named above were not available for trial because of any act or omission of prosecution.

(2) There was no showing that named witness above could or would be available to testify for or in behalf of Movant at the trial had a continuance been granted.

(3) There was no showing that said witness's testimony could not be proven by other witnesses available to Movant at trial but merely cumulative. [Tr. 230–231]

veals that Mr. Harrington and Mr. Combs did an outstanding job, particularly in view of the facts which, of course, were made by Garton, Andrews and Streater." (Id. at 529). Indeed in the final paragraph of its opinion, the Supreme Court of Missouri reiterated that it was not necessary "to demonstrate in detail the complete untenability of the claim of ineffective counsel." (454 S.W.2d at 530). In reliance upon state cases, that court first concluded that "on this issue, as on all others Judge Donelson made a supported finding of 'skilled lawyers' and by this state's standards and upon this record that finding is all but incontestable."[2]

As a separate ground, the Supreme Court of Missouri stated the following in regard to the applicable federal standard of ineffective assistance of counsel:

> But more in point here, particularly upon the claim of violation of due process, is the fact that measured by the standards of the federal courts there is indeed no basis for the claim of ineffective and incompetent counsel. The governing federal principle is set forth in detail in a fully documented opinion handed down concurrently. "[T]he rule established in many cases in the federal courts is that the standard by which effectiveness of counsel is measured is whether his actions (counsel's) or lack thereof made the trial a farce or a mockery of justice." State v. Schaffer, Mo., 454 S.W.2d 60 [Id. at 530].

State v. Schaffer, from which the Supreme Court of Missouri quoted the "farce or a mockery of justice" standard, shows that Schaffer derived the standard from Cardarella v. United States, 375 F.2d 222, 230 (8th Cir. 1967), and from similar "mockery, sham, or farce" language found in Johnson v. United States, 380 F.2d 810, 812 (10th Cir. 1967). It is therefore apparent that in Garton The Supreme Court of Missouri quoted and followed a Sixth Amendment standard articulated by the Eight Circuit. Whether Cardarella and other Eighth Circuit cases which recognize the "farce and mockery" rule correctly state the proper federal standard is an entirely different question.

## IV.

In regard to that question, we find ourselves in a juridical situation not dissimilar from the situation in which we found ourselves in regard to the double jeopardy question presented in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In that case, the Supreme Court correctly noted that this district court, "considering itself bound by this (Supreme) Court's decision in Hoag v. New Jersey, 356 U.S. 464, [78 S.Ct. 829, 2 L.Ed.2d 913] . . . denied the writ, although apparently finding merit in the petitioner's claim." (397 U.S. at 440, 90 S.Ct. at 1192). The Supreme Court also quoted our conclusion, stated in 289 F.Supp. 871 at 873, that "it is the duty of this Court to follow the law as stated by the Supreme Court of the United States until it expresses a contrary view."[3] (Id. at n. 4).

---

2. Missouri apparently continues to accept the standard set forth in State v. Dreher, 137 Mo. 11, 38 S.W. 567 (1897), which concluded that "the neglect of an attorney is the neglect of his client" and that "neither ignorance, blunders, nor misapprehension of counsel, not occasioned by his adversary, is ground for setting aside a judgment or awarding a new trial." That case added that such a rule "is founded upon the wisest public policy." This language from State v. Dreher is quoted with approval and followed in several recent Supreme Court of Missouri cases involving ineffective assistance questions. See, e.g., State v. Worley, 371 S.W.2d 221 (Mo.1963).

3. The Supreme Court also quoted what Judge, now Mr. Justice, Blackmun had observed in the Eighth Circuit opinion in Ashe in regard to the duty of a lower federal court to follow the decisions of the Supreme Court. He said that the Court of Appeals' "task is not to forecast but to follow those dictates, despite their closeness of decision, which at this moment in time are on the books and for us to read." (399 F.2d at 46)

Judge Learned Hand, in his dissent in Spector Motor Service v. Walsh, 139 F. 2d 809, 822 (2d Cir. 1944), pointed out the difference between the situation in which a lower court is "free to start afresh" in regard to a particular question of law and one in which its controlling court has indicated a contrary view. Judge Hand concluded with the admonition that it is not desirable:

for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant; on the contrary, I conceive that the measure of its duty is to divine, as best it can, what would be the event of appeal in the case before it. (139 F.2d at 823).

▆ The task of divining what our Court of Appeals would likely do in this case, absent a fundamental re-examination of the rationale of *Cardarella*, is not a particularly difficult task, in light of that Court's acceptance and application of the *Cardarella* "farce and mockery" rule in its most recent opinion, Brown v. Swenson, 487 F.Supp. 1236 (8th Cir., 1973). Application of the "farce and mockery" rule in this, or, for that matter, in almost any other case, implicitly requires a denial of petitioner's Sixth Amendment ineffective assistance of counsel claim without further factual inquiry. We shall make such a finding and conclusion in this case pursuant to what we believe is commanded by the decisions of our controlling court.

We believe, however, that it is appropriate and consistent with our duty as a district court to indicate our respectful view that the present and various rules of decision of the Eighth Circuit in regard to ineffective assistance questions present troublesome problems for both State and federal trial judges in the Eighth Circuit, and to state how we would have proceeded if we had been able to convince ourselves that the ineffective assistance of counsel question presented in this case was open for our consideration.[4]

V.

Some five years ago, in Goodwin v. Swenson (W.D.Mo.1968), 287 F.Supp. 166, we were required to consider a state prisoner habeas case in which the Supreme Court of Missouri had disposed of the postconviction Sixth Amendment question of ineffective assistance of counsel by finding only that the petitioner's trial attorney was "an able lawyer who had previous experience in the trial of criminal cases." In *Goodwin*, we recognized that the Eighth Circuit had in some of its cases expressed the applicable federal standard by using such words as "travesty," "sham," "farce," or "mockery of justice." Because the Supreme Court of Missouri had relied solely upon an obviously inadequate state standard, we felt free in *Goodwin* to state, in light of the Supreme Court and other cases which we discussed in detail, that it was "quite apparent that the cases do not turn on the formal language used by a particular court to state the applicable rule." (287 F.Supp. at 183). In *Goodwin*, we did not feel compelled to adopt either the rhetoric or the implications of a test stated in "farce" or "mockery of justice" language. We ac-

---

4. An example of our view of our duty as a district court was first stated over ten years ago in United States v. Travelers Indemnity Company, 215 F.Supp. 455, 462–463 (W.D. Mo.1963). In that case we concluded that we were bound by an earlier Court of Appeals opinion but we indicated what we would have held "had we been able to convince ourselves that the questions were open for our decision." Mr. Justice, then Judge, Blackmun apparently considered what we had stated to be helpful because he made reference to what we had said in connection with the Court of Appeals consideration of an entirely different case. See Continental Casualty Co. v. Allsop Lumber Co., 336 F.2d 445, 451 (8th Cir. 1964). And in Koppers Company v. Continental Casualty Company, 337 F.2d 499, 504 (8th Cir. 1964), Mr. Justice Blackmun again made reference to what was said in *Travelers*, and clarified the language and holding of the earlier case which he noted that this Court had "found so troublesome."

cordingly concluded, consistent with some of the Eighth Circuit cases which avoided use of the "farce and mockery" language, that the Sixth Amendment question presented should be determined by deciding whether or not defendant's trial counsel, on the facts, "did or did not render effective assistance in the defense of an accused under all the facts and circumstances of the particular case." (Id. at 182).

Thereafter, we applied what we believed was the proper federal Sixth Amendment standard in Brizendine v. Swenson, 302 F.Supp. 1011 (W.D.Mo. 1969), (in which we concluded that the unawareness on the part of counsel of a rule of law basic to the case denied the accused the effective representation guaranteed by the Constitution); Pedicord v. Swenson, 304 F.Supp. 393 (W.D. Mo. en banc 1969), aff'd on other grounds, 431 F.2d 92 (8th Cir. 1970) (in which we concluded that counsel's failure to properly advise the defendant of the consequences of his guilty plea violated petitioner's Sixth Amendment rights under the circumstances); and in Turley v. Swenson, 314 F.Supp. 1304 (W.D.Mo.1970) (in which we concluded that defense counsel's failure to investigate the validity of either petitioner's confession or the search and seizure question presented, and in which defense counsel spent only thirty minutes with the defendant before his plea of guilty sustained the petitioner's Sixth Amendment claim).

The only case in which the State of Missouri perfected a noticed appeal was *Turley*. In that case the Court of Appeals reversed this Court by applying its *Cardarella* rule under which it concluded that defense counsel's failure to conduct a collateral investigation of the facts was not "such a dereliction of duty as to make the proceeding a farce and a mockery of justice, shocking to the conscience of the Court." (443 F.2d 1313, 1317) (8th Cir. 1971).

In this case we were again required to determine if we were free to apply a standard other than the "farce and mockery of justice" rule. This required an examination of the Eighth Circuit's recent cases in which ineffective assistance questions had been presented. That review made clear that our Court of Appeals has in a particular line of cases expressly articulated the "farce and mockery" rule. In addition to State of Missouri v. Turley, *supra*, see, e. g. Lupo v. United States, 435 F.2d 519, 523 (8th Cir. 1970); Hanger v. United States, 428 F.2d 746, 748 (8th Cir. 1970); and Shaw v. United States, 403 F.2d 528, 529 (8th Cir. 1968). We also recognized, of course, that the *Cardarella* rule has not been the only articulation of the test to be applied in an ineffective assistance case.

In Taylor v. United States, 282 F. 2d 16, 20 (8th Cir. 1960), for example, Judge (now Mr. Justice) Vogel concluded that the requirement of the Sixth Amendment "is met whenever the accused is supplied counsel who exercises that judgment which might be expected of one trained in the law and committed to the diligent application of its principles." Without noticing the "farce and mockery of justice" rule, the test articulated by then Judge Vogel in *Taylor* was applied in Evans v. United States, 346 F.2d 512, 514 (8th Cir. 1965) and Konvalin v. Sigler, 431 F.2d 1156, 1158 (8th Cir. 1970).

Other more recent Eighth Circuit cases are apparently in the process of developing what may be still another standard. Robinson v. United States, 448 F.2d 1255, 1256 (8th Cir. 1971), for example, states that before a violation of a particular defendant's Sixth Amendment rights may be found: "the circumstances must demonstrate that which amounts to a lawyer's deliberate abdication of this ethical duty to his client." See also Redus v. Swenson, 468 F.2d 606, 607 (8th Cir. 1972), which quotes *Robinson's* conclusion that the facts must demonstrate "such conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant."

And some Eighth Circuit cases apparently apply, or at least mention the existence of more than one standard in the same case. See, e. g., Kress v. United States, 411 F.2d 16, 22 (8th Cir. 1969) ("farce and mockery" and "judgment of one trained in law."); Slawek v. United States, 413 F.2d 957, 959 (8th Cir. 1969) ("farce and mockery" and "judgment of one trained in law"); and Brown v. Swenson, *supra*, ("farce and mockery" and "deliberate abdication.") Still other Eighth Circuit cases apparently turn on whether the petitioner has in fact adduced sufficient evidence to sustain his claim. See In re Parker, 423 F.2d 1021, 1025 (8th Cir. 1970) and United States v. Schroeder, 433 F.2d 846, 852 (8th Cir. 1970), cert. den. 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971). Many decisions simply recite the unquestioned rule that the effective assistance requirement of the Sixth Amendment does not require that a defense counsel achieve a favorable result. See, e. g. Meyer v. United States, 424 F.2d 1181, 1192 (8th Cir. 1970) and United States v. Sheehan, 428 F.2d 67, 80 (8th Cir. 1970), cert. den. 400 U.S. 853, 91 S.Ct. 66, 27 L.Ed.2d 90 (1970).

In determining whether we were free to apply what we considered to be the proper federal rule, we also recognized that the Eighth Circuit recently stated in United States v. Cotton, 446 F.2d 865, 866 (8th Cir. 1971) that, so far as that case was concerned, it was not necessary to "decide the exact test in determining the effective assistance of counsel." That case also implicitly recognized that there may be a difference between the "farce and mockery" rule and the "judgment of one trained in law" rule, articulated in *Taylor,* since the Court of Appeals concluded that the representation of trial counsel in that case "was *well above* the standard sometimes enunciated of a trial that is a sham or a mockery" and, in the alternative, that "the representation provided by trial counsel satisfied the standard earlier articulated by this Court in Taylor v. United States."

It would seem obvious that if the Court of Appeals concluded that the more stringent *Taylor* test of "one trained in the law" was satisfied, certainly such a finding would necessarily establish that the lower standard of the "farce and mockery" rule had also been satisfied. Certainly, so far as the direct appeal in *Cotton* was concerned, it was not necessary for the Court of Appeals to decide which of those two tests, or whether some other test, was the proper federal standard to apply in all Sixth Amendment ineffective assistance of counsel cases.

But the situation for the various State court judges and the federal district judges in the Eighth Circuit is entirely different. Every district judge in the Eighth Circuit, for example, is necessarily required to decide in every state prisoner habeas corpus case presenting a Sixth Amendment ineffective assistance question precisely what standard is the proper standard under the Constitution. If different standards are articulated in various Eighth Circuit cases, the various State courts are afforded a multiple choice as to which standard is to be applied in regard to the federal question presented.

We do not believe it is either just or consistent with fundamental principles of comity to fault a State court for selecting any of the federal standards articulated in the Eighth Circuit. But to say that the State courts are free to pick and choose one of several standards articulated by the Eighth Circuit cases is not to say that the Eighth Circuit should not subject what other Courts of Appeals have concluded are inconsistent standards to a reappraisal so that all State courts and all district judges in the Eighth Circuit may apply a proper single standard in all cases in which the question may be presented.

As will be noted in the next part of this opinion, the Fifth Circuit, from which the Eighth Circuit most recently borrowed its "farce and mockery" test, has recognized that such a test is incon-

sistent with applicable law, is a lower standard of conduct for counsel than that required by the Sixth Amendment, and therefore will no longer be recognized in that Circuit. We shall also briefly note current developments in other Circuits.

## VI.

In Brown v. Swenson, *supra,* our Court of Appeals' most recent case, the Court adopted the "farce, or a mockery of justice" language used in Scalf v. Bennett, 408 F.2d 325, 327–328 (8th Cir. 1969). *Scalf,* in turn, had quoted and relied upon similar language used by the Fifth Circuit in White v. McHan, 386 F.2d 817, 818 (5th Cir. 1967). But since its opinion in *McHan,* the Fifth Circuit has explicitly rejected the "farce or mockery of justice." rule. We do not, of course, suggest that because of the Fifth Circuit now expressly rejects what it has recognized as the improper "low standard of effectiveness" automatically produced by its former "farce and mockery" rule, this Court, in the language of Judge Hand, is free "to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant." But we do believe a brief discussion of those cases would be helpful.

In the past the Fifth Circuit, in a manner quite similar to the Eighth, had applied both the "farce and mockery" rule as articulated in White v. McHan, and the higher standard enunciated in MacKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960), modified 289 F.2d 928, cert. denied 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). *MacKenna* stated that a defendant had a Sixth Amendment right to have "counsel reasonably likely to render *and rendering* reasonably effective assistance." [*MacKenna's* emphasis].

The existence of a conflict between the lower "farce and mockery" standard and the *MacKenna* standard was recognized by the Fifth Circuit in West v. State of Louisiana (5th Cir. 1973), 478 F.2d 1026, 1033, in which the "farce and mockery" standard was rejected and *MacKenna's* "reasonably effective" standard was adopted.

The Court of Appeals for the District of Columbia developed their standard further in the recent case of United States v. De Coster, 487 F.2d 1197 (D.C.Cir.1973). In Scott v. United States, 138 U.S.App. D.C. 339, 427 F.2d 609, 610 (1970), that Court concluded that the farce and mockery standard was "no longer valid as such but exists in the law only as a metaphor that the defendant has a heavy burden to show requisite unfairness." That case appropriately noted that "the 'farce and mockery' standard derives from some older doctrine on the content of the due process clause of the Fifth Amendment." The proper Sixth Amendment standard, according to *Scott,* was a more "stringent standard[s] than the Fifth Amendment."

The Court of Appeals for the District of Columbia developed their standard further in two recent cases, United States v. De Coster, D.C.Cir., 487 F.2d 1197, handed down on October 4, 1973, and Angarano v. United States, handed down on October 30, 1973, both of which are digested in 14 Crim.L.Rep. 2210–2213 (December 5, 1973). In *De Coster,* the Court of Appeals of the District of Columbia noted that the rejection of the "farce and mockery" rule in Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 116 (1967) had occurred in a line of cases in which the claim of ineffective assistance question arose in postconviction proceedings. The ineffective assistance question presented in *De Coster* arose on direct appeal. The following standard was stated for direct appeal cases in *De Coster*: "a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent, conscientious advocate." That court then added that:

Since "reasonably competent assistance" is only a shorthand label, and not subject to ready application, we follow the approach adopted by the Fourth Circuit and set forth some of

the duties owed by counsel to a client: In General—Counsel should be guided by the American Bar Association Standards for the Defense Function. They represent the legal profession's own articulation of guidelines for the defense of criminal cases. 487 F.2d 1203.[5]

The Court of Appeals of the District of Columbia then specifically summarized particular duties, the reasonable discharge of which would in fact demonstrate that a particular defendant would have received competent assistance. The Court, we believe properly, noted that without the benefit of an appropriate evidentiary hearing, "proof of prejudice may well be absent from the record precisely because counsel has been ineffective." It concluded that:

> Much of the evidence of counsel's ineffectiveness is frequently not reflected in the trial record (e. g., a failure to investigate the case, or to interview the defendant or a witness before trial). As a result, ineffectiveness cases have often evolved into tests of whether appellate judges can hypothesize a rational explanation for the apparent errors in the conduct of trial. But neither one judge's surmise nor another's doubt can take the place of proof. [Id. at 1204]

■ The rationale of that conclusion supports our view that additional factual inquiry is necessary under the circumstances of this case. If we were free to conduct such an inquiry, we would do so. We cannot, however, convince ourselves that we are free to proceed in such a manner because we cannot escape the conclusion that application of the existing "farce and mockery" rule requires a

denial of petitioner's ineffective assistance claim.

## VII.

As we noted above, application of the "farce and mockery" rule to the circumstances of this case is not difficult when this case is viewed in light of the Court of Appeals' application of that rule to the circumstances presented with *Turley*. Consistent with Judge Learned Hand's admonition that it is our duty to divine, as best we can, what the Court of Appeals would decide in the event of an appeal, we are quite confident that should the Court of Appeals apply its "farce or mockery" test to the circumstances of this case, it would conclude that any finding this Court may make in regard to ineffective assistance would implicity be found to be clearly erroneous and petitioner would be denied relief on the theory that the Supreme Court of Missouri had properly articulated and applied the Eighth Circuit's "farce and mockery" standard.

Quite frankly, we know of no case in the Eighth Circuit or elsewhere which has ever concluded that the "farce and mockery" rule has ever been violated in a particular case.

The files and records in this case demonstrate that the Court does not share the view stated by the Supreme Court of Missouri as an "indisputable fact . . that in no event could Garton ever be found innocent or exonerated or discharged as he apparently believes." Depositions taken pursuant to federal process have established that there were alibi witnesses who could have testified at the trial but who did not do so. If we were free to apply any standard oth-

---

5. Judge Van Dusen, in his concurring opinion in Moore v. United States, 432 F.2d 730, 741 (3rd Cir. 1970), also suggested that the ABA Standards Relating to the Defense Function, specifically Principles 1.1, 1.2, 1.6, 3.1, 3.2, 3.5, 3.6, 3.7, 3.8, 3.9, 4.1, 4.4, 5.1, 5.-2, and Parts VI, VII and VIII, should be utilized to define the federal standard. Judge Freedman's majority opinion for the Third Circuit en banc pointed out that

"there is a conflict among other circuits as to whether effective counsel . . . means counsel of normal competency or merely counsel not so incompetent as to render the trial a farce," directing attention to the Note, The Right to Counsel and the Neophyte Attorney, 24 Rutgers L.Rev. 379 (1970) [432 F. 2d at 737]. The Third Circuit rejected the "farce and mockery" rule in favor of "the standard of normal competency" in *Moore*.

er than the "farce and mockery" rule, we would, as we have indicated, deem it necessary to conduct a further evidentiary hearing to ascertain whether defendant's counsel or anyone else involved in the case, were familiar with the fact that all of the witnesses who testified at the two extradition hearings in New Mexico could have been compelled to testify in Missouri pursuant to V.A.M.S. § 491.420, Missouri's version of the Uniform Law to Secure Attendance of Witnesses from Within or Without the State in Criminal Proceedings. Judicial notice requires recognition of the fact that New Mexico has also adopted the Uniform Act.

We would also make further inquiry into the circumstances surrounding the refusal of the trial court to grant a continuance. We recognize that the rule of Franklin v. South Carolina, 218 U.S. 161, 168, 30 S.Ct. 640, 54 L.Ed. 980 (1910), prohibits a finding of a violation of due process for refusal to grant a continuance except in "extreme cases." But such exceptional cases have occurred. See Scott v. United States (5th Cir. 1959), 263 F.2d 398; and Everitt v. United States (5th Cir. 1960), 281 F.2d 429. A full development of the facts could conceivably indicate that the question of continuance may be intertwined with the question of alleged failure to produce the New Mexico witnesses. See United States v. Myers (3 Cir. 1964), 327 F.2d 174, 182, a state prisoner habeas case having a similar problem presented.

We cannot properly reach those questions because we are under duty to approve the Supreme Court of Missouri's application of the "farce and mockery" rule. Under the command of the Eighth Circuit cases, we make the same application of that rule which we believe the Court of Appeals would make under the circumstances. We can not convince ourselves that the Court of Appeals would, on the basis of the present record, find and conclude that petitioner's trial as held was a farce, or a mockery of justice. Under the circumstances,

we have no alternative but to deny petitioner relief in regard to his Sixth Amendment claim that he was deprived of the effective assistance of counsel as guaranteed by the Sixth Amendment.

For the reasons stated, it is

Ordered that the petition for habeas corpus should be and the same is hereby denied.