Bobby T. GRIFFITH, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 9445.

Missouri Court of Appeals,
Springfield District.

Jan. 10, 1974.

Motions for Rehearing to Transfer to Court En Banc or Transfer to Supreme Court were Denied Jan. 18, 1974.

Application to Transfer Denied
Feb. 11, 1974.

Joe Welborn, Bloomfield, and Bobby T. Griffith, pro se.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

TITUS, Judge.

Bobby Tyrone Griffith appeals from the judgment overruling his Rule 27.26, V.A.M.R. motion to vacate a 30-year sentence imposed upon a plea of guilty to sodomy. § 563.230 RSMo 1969, V.A.M.S.[1] The charged act is said to have been one of three committed by movant while he was incarcerated in the Stoddard County jail awaiting trial on two forgery counts. At the extensive evidentiary hearing held on the Rule 27.26 motion, movant was represented by able court-appointed counsel who has filed a brief and requested to orally argue movant's cause upon appeal. However, movant has filed what he terms a pro se brief, and albeit the two briefs coincide in most respects, movant declares that counsel's writing "is not the brief of appellant. It is *wrong completely*.[2] Please submit the case for consideration without oral argument on the Pro Se Brief." We undertake to accommodate these directions. The pro se brief contains eight points, many overlapping, and all written heedless of the requirements of Rule 84.04(d), applicable alike to both civil and criminal appeals. Rule 28.18; State v. Warren, 469 S.W.2d 662, 663 (Mo.App.1971). Nevertheless, these will be noted, though not necessarily in the order of their appearance in the brief.

■ One point relied on is that the trial court erred in failing to find that § 563.230 (see note 1) was constitutionally void because it is "vague, uncertain, indefinite and did not charge [movant] with any offense." To this movant cites 39 cases, statutes and constitutional provisions. He also lists 13 sociosexual articles intended, we assume, to induce legitimization of sodomitical practices between consenting adults.[3] As to the latter, it is not a proper

function for any court to judicially repeal laws on purely sociological considerations —movant would do better to address the cited articles to the General Assembly for it to determine if modern mores require the alteration or expunction of sodomy statutes. Movant's urgings that § 563.230 is constitutionally void were thoroughly explored and rejected in State v. Crawford, 478 S.W.2d 314 (Mo.1972). This court's subordinate position in the appellate judicial structure does not endow it with either the authority or temerity to rule contra to "the highest court in the state" (Mo. Const. Art. V, § 20, V.A.M.S.), and we would be the last to condemn a trial court for following suit.

■ Five of the "points" contained in movant's pro se brief are abstract declarations that the trial court erred in *not* finding (1) "that the plea of guilty was involuntary; that appellant did not understandingly plead thereto; nor intelligently waive his constitutional rights," (2) "that appellant had been mislead [sic] by his attorney into believing he would receive five years and his other charges dropped for his plea," (3) "that a 'promise' had been made appellant," (4) "that appellant [had] sustained his burden of proof," and (5) "that appellant had been denied effective assistance of counsel for his defense." An additional conclusion is recited as a sixth "point," i.e., "The record demonstrates a manifest injustice which could be ruled upon by this court, or remand for re-sentencing because the court considered information that was not true in deciding to impose a sentence of thirty years upon appellant." None of these abstractions, contrary to Rule 84.04(d), undertake to state "wherein and why" the alleged failures of the trial court constituted error. We are not informed in the points "why" the plea

---

1. Sec. 563.230 reads: "Every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, with the sexual organs or with the mouth, shall be punished by imprisonment in the penitentiary not less than two years."

2. Movant's emphasis.

3. The sodomy charged was allegedly not with the consent of the other party.

was involuntary, "why" appellant did not understandingly plead or intelligently waive his constitutional rights, or what constitutional rights appellant waived. Moreover, we do not know from the "points" what "promise" was supposedly made to appellant, or "why" it is supposed appellant was misled by his attorney, or "why" it is contended he did not sustain his burden of proof, or "wherein" appellant was denied effective assistance of counsel. Neither are we admonished by the "points" what particular untrue information was allegedly considered by the sentencing court in arriving at a determination to sentence appellant to thirty years. We have no duty to seine the argument portion of an appellant's brief or the transcript on appeal to ascertain the whereins and whys of claimed errors presented in the points relied on as mere conclusions [State v. Dennison, 428 S.W.2d 573, 579 [8] Mo.1968)] and would be justified in terminating our consideration of these points because of the nonobservance of Rule 84.-04(d). We will, however, consider them ad finem.

As to the alleged "promise" and movant's complaint that his attorney misled him into believing he would " 'receive five years and his other charges dropped for his plea,' " we note that the other charges were dropped and that before any action was taken on the plea, the court interrogated movant as follows: "Q. Has anyone told you or promised or suggested to you that you would receive a lighter sentence or probation or parole or any other favors to get you to say you are guilty of this crime? A. No, sir. . . . Q. Has any promises been made to you by anyone? A. No, sir. Q. Do you understand that any agreements or proposals between yourself, your attorney, and the Prosecuting Attorney are not binding on the Court, and it's up to me to determine what to do in your case? A. Yes, sir. . . . Q. Do you have any questions to ask of me or statements to make to me before I act upon your plea of guilty? A. No, sir.

. . . Q. You are not pleading guilty under any duress, coercion, or compulsion, or because of any promises, inducements, or representations, is that correct? A. Yes, sir."

Contrary to the foregoing, movant testified at the hearing on his Rule 27.26 motion that a week before he changed his plea from "not guilty" to "guilty," his appointed counsel told him that William Vandiver, who was charged with the same crimes as movant, had "pleaded guilty for five years and I told him I'd plead guilty for five years and my other charges dropped." According to movant, his lawyer then "went out [of the jury room] and he came back and said, 'All right. We'll plead guilty for five years and the other charges dropped.' " The attorney did not advise movant "as to [whom] he discussed this with" and movant did not discuss the length of any sentence with the sheriff, prosecuting attorney, or any other officers —"Q. The only person you talked to about a sentence was your own attorney . . .? A. Yes." Movant's mother and grandmother testified that before movant was sentenced he told him that his lawyer said "he wouldn't get over five years." The parties agreed that Libbey Brown, movant's half-sister, would cumulatively testify as did his mother and grandmother. Movant's Exhibits C and D at the evidentiary hearing on his motion consisted, inter alia, of interrogatories propounded to the lawyer appointed to represent him on the sodomy charges and the attorney's answers thereto. One interrogatory inquired "whether the prosecution made any deals for a plea of guilty"; the answer was "No."

William Vandiver, testifying at the motion hearing, asserted "I was in . . . the outer office first, then they took [movant] in and he plead not guilty and come back out and they called me in and I plead guilty and went back out there and [the lawyer] was telling [movant] that I'd pled guilty for five years and that he

could plead guilty for five years also." However, opposed to what movant and Vandiver said was represented by counsel, it is the undisputed fact that Vandiver did not plead guilty for five years; Vandiver was sentenced to 30 years in movant's presence 50 days after movant had pled guilty and immediately before movant was called to the bench for allocution and sentencing following completion of a presentence investigation. Ignoring the unlikely situation of movant being unaware that Vandiver had not been sentenced at the time of the purported representation and assuming, arguendo, that counsel's statement qualified as a "promise," whether such a promise was in fact made is not consistent with movant's several assurances to the sentencing court that he was not pleading guilty "because of any promises, inducements, or representations," is contradicted by the lawyer's interrogatory answer that no "deals" had been made, and is confused by movant's assertion the promissory conversation occurred in the jury room, whereas Vandiver recounted that it transpired in the outer office. Movant's argument is predicated entirely upon the assumption that a promise had actually been made. But the promise did not become an established fact simply because movant and Vandiver so testified or because movant's relatives related hearsay testimony as to what movant had reported to them. The trier of the fact had the right to, and expressly did, reject the testimony anent a promise being made that if movant pleaded guilty he would receive a sentence of five years. Bradley v. State, 494 S.W.2d 45, 47–48 [2] (Mo.1973).

■ The transcript of the proceeding had by the court in conjunction with the plea of guilty was entered as an exhibit in the hearing held on the Rule 27.26 motion. This exhibit attests to the court's full and complete compliance with Rule 25.04. Movant (then defendant) was personally interrogated by the court in a fashion exceeding the recommended procedure outlined in Flood v. State, 476 S.W.2d 529, 535–536 (Mo.1972). At the evidentiary hearing on the motion, movant was questioned concerning each segment of his interrogation when the guilty plea was entered, following which he was asked and replied: "Q. . . . Did you understand all of those things that [the judge] told you at that time? A. I, I think I did." In view of this and in deciding the motion in this case, the trial court was entitled to evaluate all the testimony introduced at the evidentiary hearing, together with the record of what occurred at the time the plea of guilty was entered, and conclude that the plea was understandingly and voluntarily made and that defendant had knowingly waived his constitutional rights. O'Neil v. State, 502 S.W.2d 342 (Decided Dec. 10, 1973, Mo.)

Before the guilty plea was accepted, the following occurred in the lengthy colloquy between the court and movant: "Q. Have you been mistreated by anyone? A. No, sir. Q. Have you been threatened by anyone? A. No, sir. . . . Q. You are not pleading guilty under any duress, coercion or compulsion, . . ., is that correct? A. Yes, sir." The first hint of record that physical coercion was involved, appeared when movant went before the bench for sentencing directly after Vandiver had been sentenced to 30 years. In the course of discussing the presentence investigation report with counsel, this was said: "THE COURT: Mr. Griffith [movant], do you have any explanation about it? THE DEFENDANT: I didn't do it. THE COURT: You didn't do it? When did you decide you didn't do it, Mr. Griffith? THE DEFENDANT: I knew it all along, but what could I do, with them people hitting me on the head and spraying mace in my face . . . . THE COURT: Did you know [the alleged subjects of movant's sodomitical acts] while they were in jail there with you? THE DEFENDANT: I knew them. THE COURT: Is there any legal cause or reason why the Court should not pass sentence in your case upon your plea of guilty to the charge of sodomy? THE DEFENDANT: No, sir." At the Rule 27.26 motion hearing both movant · and

Vandiver testified that before they pleaded guilty, mace had been sprayed in their faces by the sheriff and others to force them to do push ups.

■ The foregoing represents another conflict in what movant represented to the court when he pleaded guilty and what he told the court at sentencing and at the evidentiary hearing on his Rule 27.26 motion. However, the narrow dispositive issue is not whether mace was actually sprayed on movant to force him to do push ups, but whether such alleged actions (even if true) had an effect upon his entry of a plea of guilty. As previously stated, movant denied ever discussing any sentencing with the sheriff or any other officer, and the major thrust of his argument is that the plea was induced by the averred promise of a five-year sentence, not because of any physical abuse he may have received. A conning of the record fails to disclose a nexus between the claimed mistreatment and the plea. Under such circumstances we cannot say the circuit court clearly erred in finding that movant's alleged treatment at the jail had no effect upon his entry of a guilty plea. Brodkowicz v. State, 474 S.W.2d 822, 826–827 (Mo.1971).

Threaded throughout movant's brief are references to his so-called declaration of innocence at the sentencing and his statements to the presentence investigator that he was not guilty. "A motion to vacate is not the proper vehicle for relitigating the issue of guilt or innocence. State v. Schaffer, 454 S.W.2d 60 (Mo.1970). If as it has been determined [movant] pleaded guilty voluntarily, knowingly and with understanding, his actual guilt, or an express admission of guilt, is not a constitutional prerequisite to the imposition of a criminal penalty. 'An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.' North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970)." Bradley v.

State, supra, 494 S.W.2d at 48 [3, 4]. But be that as it may, at the plea hearing the court and movant spoke: "Q. You have heard [the prosecuting attorney's] statement of the facts that is alleged to have occurred . . ., here in Stoddard County, did you commit the act just described by the Prosecuting Attorney? A. Yes, sir. Q. Pardon? A. Yes, sir. Q. Are you voluntarily pleading guilty because you are guilty of this crime? A. Yes, sir. Q. Do you have anything you want to add to or wish to explain about the facts as stated by the Prosecuting Attorney? A. No, sir."

■ Movant's complaint that the sentencing judge "considered information that was not true in deciding to impose a sentence of thirty years," presents nothing for our review because this was not raised in his motion as a ground for relief under Rule 27.26. Lillibridge v. State, 499 S.W.2d 573, 577 [3] (Mo.App.1973). We may not consider grounds for relief in Rule 27.26 motions advanced for the first time upon appeal. Schleicher v. State, 483 S.W.2d 393, 394 [2] (Mo. banc 1972). This particular point is bottomed on movant's assertion that the sentencing court relied on the presentence report in arriving at its determination as to what sentence to impose. Rule 27.07(b) requires that when a probation officer is available, that officer shall make a presentence investigation unless directed otherwise by the court. This is clear authority for the sentencing court to employ the presentence investigation as discretion dictates. State v. Maloney, 434 S.W.2d 487, 496 [17] (Mo.1968); Cassidy v. United States, 428 F.2d 585, 588 (8th Cir. 1970). When movant pleaded guilty, he acknowledged his understanding that his sentence would not be set until the court had "read your past criminal record, if any, and the presentence report of the State Probation and Parole Department." His counsel was provided a copy thereof and informed the court that he had "read this investigation report very thoroughly several times" before sentence was imposed. Movant, in his Rule 27.26 motion

hearing, adduced no proof that the presentence report contained any untruths. Movant's assertion that the sentencing court considered presentencing information that was not true cannot be sustained upon a naked complaint thereof in his brief [Hendrix v. State, 495 S.W.2d 457, 460 (Mo. App.1973)], and when, as here, there was no evidence the report consisted of any untruths, we cannot convict the circuit court of error on an issue which went unnourished for lack of evidentiary support. Ward v. State, 451 S.W.2d 79, 81 [2] (Mo.1970).

Since a guilty plea was entered, "determination of the adequacy of representation is immaterial 'except to the extent counsel's incompetence bears on the issues of voluntariness and understanding. Kress v. United States, 411 F.2d 16, 22 (8th Cir., 1969).' State of Missouri v. Turley, 443 F.2d 1313, 1316 [1, 2] (8th Cir., 1971)." Barylski v. State, 473 S.W.2d 399, 402 (Mo.1971). And as it has been determined, supra, that the trial court did not clearly err in finding that movant pleaded guilty voluntarily, knowingly and with understanding, movant's "point" regarding inadequate representation by counsel becomes a superfluity.

In the pro se brief movant states as a "point": "The trial court abused its discretion, and a new hearing [on the Rule 27.26 motion] should be held, because the trial court refused to allow appellant to call a material witness, and then finding that appellant had not sustained his burden of proof." The argument to this abstraction, which we view ex gratia, refers to movant's desire to call Danny Deberry as a witness. Movant, in his brief, describes Deberry as being "on bond . . . for the same charge appellant got thirty years for." The original Rule 27.26 motion filed by movant listed no witnesses; his amended motion listed nine intended witnesses but Deberry was not among those named. At the hearing on the motion, movant told the court "That [Deberry] heard the lawyer tell me I, I'd get five years and drop

the other charges," and when movant said "I'd like to use Deberry's testimony," the court observed: "Well, on July 24th, 1972, I appointed Mr. Welborn as your attorney; you were notified of that very shortly after that. What is today? The 17th day of November [1972]. The first thing I find is this thing I get here this morning, and it's an abortive request to subpoena additional witnesses. And, from what you told me, I don't think that Deberry's testimony would throw any light on the subject." From movant's representation, it is obvious Deberry's testimony would be only cumulative of what movant and Vandiver had already testified to, and allowing or disallowing the same was within the sound discretion of the trial court. State v. Engberg, 376 S.W.2d 150, 157–158 [2] (Mo. 1964). State v. Tompkins, 277 S.W.2d 587, 591 [10] (Mo.1955). Particularly in view of the fact movant did not make it known until the day of the hearing that he desired Deberry's cumulative testimony, we discern no abuse of discretion on the part of the court.

What has been said disposes of all the "points" raised in the pro se brief and all of the points stated in brief of counsel save that "The sentence is so excessive as to shock the conscience of this court and to authorize this court to set aside the sentence." To this we repeat that fixing the limits of punishment is a legislative function [McCulley v. State, 486 S.W.2d 419, 423 [5] (Mo.1972)], and as movant did not receive a sentence greater than the highest limit declared by law, it cannot be held to be excessive [State v. Smith, 445 S.W.2d 326, 332 [6] (Mo. 1969)] or cruel or unusual [State v. Heinrich, 492 S.W.2d 109, 113 [6] (Mo.App. 1973)] or judicially shocking.

The findings, conclusions and judgment of the trial court are not clearly erroneous. Accordingly, the judgment is affirmed.

HOGAN, C. J., and STONE, J., concur.

BILLINGS, J., not participating.